# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA

## AMENDED CIVIL RIGHTS COMPLAINT FORM FOR PRO SE, PRISONER LITIGANTS IN ACTIONS UNDER 28 U.S.C. § 1331 or § 1346 or 42 U.S.C. § 1983

STACY ANTONIO SCOTT JR,

Inmate ID Number: X59632,

_____,

*(Write the full name and inmate ID number of the Plaintiff.)*

**Case No.: 3:20-CV-5968-MCR-HTC**

_____

*(To be filled in by the Clerk's Office)*

**v.**

LEAH JAMES FRAME, ET AL,

_____,

_____,

*(Write the full name of each Defendant who is being sued. If the names of all the Defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names. Do not include addresses here.)*

_____/

**Jury Trial Requested?**
√ **YES** □**NO**

FILED USDC FLND PN
APR 26 '21 PM3:12

## I. PARTIES TO THIS COMPLAINT

### A. Plaintiff

Plaintiff's Name: <u>STACY ANTONIO SCOTT JR</u> ID Number: <u>X59632</u>

List all other names by which you have been known: <u>STACY CHANEL</u>

Current Institution: <u>TOMOKA CORRECTIONAL INSTITUTION</u>

Address: <u>3950 TIGER BAY ROAD, DAYTONA BEACH, FLORIDA 32124</u>

### B. Defendant(s)

State the name of the Defendant, whether an individual, government agency, organization, or corporation. For individual Defendants, identify the person's official position or job title, and mailing address. Indicate the capacity in which the Defendant is being sued. Do this for *every* Defendant:

1. Defendant's Name: <u>LEAH JAMES FRAME</u>

   Official Position: <u>LTA</u>

   Employed at: <u>SANTA ROSA CORRECTIONAL INSTITUTION</u>

   Mailing Address: <u>5850 EAST MILTON ROAD</u>

   <u>MILTON, FLORIDA 32583</u>

   √ Sued in Individual Capacity          □ Sued in Official Capacity

2. Defendant's Name: <u>S. ANDERSON</u>

   Official Position: <u>CORRECTIONAL OFFICER</u>

   Employed at: <u>SANTA ROSA CORRECTIONAL INSTITUTION</u>

   Mailing Address: <u>5850 EAST MILTON ROAD</u>

   <u>MILTON, FLORIDA 32583</u>

   √ Sued in Individual Capacity        □ Sued in Official Capacity

3. Defendant's Name: <u>ASHLEY ASBELL</u>

   Official Position: <u>CORRECTIONAL OFFICER</u>

   Employed at: <u>SANTA ROSA CORRECTIONAL INSTITUTION</u>

   Mailing Address: <u>5850 EAST MILTON ROAD</u>

   <u>MILTON, FLORIDA 32583</u>

   √ Sued in Individual Capacity        □ Sued in Official Capacity

   *(Provide this information for all additional Defendants in this case by*
   *attaching additional pages, as needed.)*

## II. BASIS FOR JURISDICTION

Under 42 U.S.C. § 1983, you may sue state or local officials for the
"deprivation of any rights, privileges, or immunities secured by the
Constitution" and federal law. Under *Bivens v. Six Unknown Named Agents of*
*Federal Bureau of Narcotics,* 403 U.S. 388 (1971), you may sue federal
officials for the violation of certain Constitutional rights.

(4) Defendant's Name: J. Baxley
Official Position: Senior Inspector
Employed at: Santa Rosa C.I.
Mailing Address: 5850 E. Milton Road
                          Milton, Florida 32583
Individual Capacity

(5) Defendant's Name: S. Brazwell
Official Position: Correctional Officer
Employed at: Santa Rosa C.I.
Mailing Address: 5850 E. Milton Road
                          Milton, Florida 32583
Individual Capacity

(6) Defendant's Name: J. Carr
Official Position: Correctional Officer Captain
Employed at: Santa Rosa C.I.
Mailing Address: 5850 E. Milton Road
                          Milton, Florida 32583
Individual Capacity

(7) Defendant's Name: Larry Childs
Official Position: Correctional Officer Colonel
Employed at: Santa Rosa C.I.
Mailing Address: 5850 E. Milton Road
                          Milton, Florida 32583
Individual Capacity

(8) Defendant's Name: Walker Clemmons
Official Position: Warden
Employed at: Santa Rosa C.I.
Mailing Address: 5850 E. Milton Road
                          Milton, Florida 32583
Individual Capacity

(9) Defendant's Name: Cowart
Official Position: Correctional Officer
Employed at: Santa Rosa C.I.
Mailing Address: 5850 E. Milton Road
                          Milton, Florida 32583
Individual Capacity

(10) Defendant's Name: D. Dice
Official Position: Correctional Officer Lieutenant
Employed at: Santa Rosa C.I.
Mailing Address: 5850 E. Milton Road
                          Milton, Florida 32583
Individual Capacity

(11) Defendant's Name: K. Grant
Official Position: Correctional Officer Sergeant
Employed at: Santa Rosa C.I.
Mailing Address: 5850 E. Milton Road
                          Milton, Florida 32583
Individual Capacity

(12) Defendant's Name: K. Gustafson - Devine
Official Position: Senior Inspector
Employed at: Santa Rosa C.I.
Mailing Address: 5850 E. Milton Road
                          Milton, Florida 32583
Individual Capacity

(13) Defendant's Name: Casey Hooper
Official Position: Correctional Officer
Employed at: Santa Rosa C.I.
Mailing Address: 5850 E. Milton Road
                          Milton, Florida 32583
Individual Capacity

(14) Defendant's Name: Mark S. Inch
Official Position: Secretary
Employed at: Santa Rosa C.I.
Mailing Address: 5850 E. Milton Road
                 Milton, Florida 32583
Individual Capacity

(15) Defendant's Name: T. Lister
Official Position: Correctional Officer
Employed at: Santa Rosa C.I.
Mailing Address: 5850 E. Milton Road
                 Milton, Florida 32583
Individual Capacity

(16) Defendant's Name: J. Lusk
Official Position: Correctional Officer
Employed at: Santa Rosa C.I.
Mailing Address: 5850 E. Milton Road
                 Milton, Florida 32583
Individual Capacity

(17) Defendant's Name: Todd Mackall
Official Position: Correctional Officer
Employed at: Santa Rosa C.I.
Mailing Address: 5850 E. Milton Road
                 Milton, Florida 32583
Individual Capacity

(18) Defendant's Name: D. Medlock
Official Position: Correctional Officer
Employed at: Santa Rosa C.I.
Mailing Address: 5850 E. Milton Road
                 Milton, Florida 32583
Individual Capacity

(19) Defendant's Name: Isaac Alexander
Official Position: Correctional Officer Sergeant
Employed at: Santa Rosa C.I.
Mailing Address: 5850 E. Milton Road
                 Milton, Florida 32583
Individual Capacity

(20) Defendant's Name: Nathaniel Morgan
Official Position: Correctional Officer Lieutenant
Employed at: Santa Rosa C.I.
Mailing Address: 5850 E. Milton Road
                 Milton, Florida 32583
Individual Capacity

(21) Defendant's Name: B. Moss
Official Position: Correctional Officer Lieutennt
Employed at: Santa Rosa C.I.
Mailing Address: 5850 E. Milton Road
                 Milton, Florida 32583
Individual Capacity

(22) Defendant's Name: B. Oakes
Official Position: Correctional Officer Major
Employed at: Santa Rosa C.I.
Mailing Address: 5850 E. Milton Road
                 Milton, Florida 32583
Individual Capacity

(23) Defendant's Name: Christopher Patrick Hughes
Official Position: Correctional Officer Lieutenant
Employed at: Santa Rosa C.I.
Mailing Address: 5850 E. Milton Road
                 Milton, Florida 32583
Individual Capacity

(24) Defendant's Name: Krystal Perkins
Official Position: Correctional Officer
Employed at: Santa Rosa C.I.
Mailing Address: 5850 E. Milton Road
                            Milton, Florida 32583
Individual Capacity

(25) Defendant's Name: Joseph Schrock
Official Position: Correctional Officer Captain
Employed at: Santa Rosa C.I.
Mailing Address: 5850 E. Milton Road
                            Milton, Florida 32583
Individual Capacity

(26) Defendant's Name: P. Tucker
Official Position: Correctional Officer Captain
Employed at: Santa Rosa C.I.
Mailing Address: 5850 E. Milton Road
                            Milton, Florida 32583
Individual Capacity

(27) Defendant's Name: W. Turner
Official Position: Correctional Officer Captain
Employed at: Santa Rosa C.I.
Mailing Address: 5850 E. Milton Road
                            Milton, Florida 32583
Individual Capacity

(28) Defendant's Name: J. Veazey
Official Position: Correctional Officer
Employed at: Santa Rosa C.I.
Mailing Address: 5850 E. Milton Road
                            Milton, Florida 32583
Individual Capacity

(29) Defendant's Name: Vickie Caile
Official Position: Education Supervisor I
Employed at: Santa Rosa C.I.
Mailing Address: 5850 E. Milton Road
                            Milton, Florida 32583
Individual Capacity

(30) Defendant's Name: Sean Norris
Official Position: Correctional Officer Lietenant
Employed at: Santa Rosa C.I.
Mailing Address: 5850 E. Milton Road
                            Milton, Florida 32583
Individual Capacity

(31) Defendant's Name: Linda Jordan
Official Position: Correctional Officer Sergeant
Employed at: Santa Rosa C.I.
Mailing Address: 5850 E. Milton Road
                            Milton, Florida 32583
Individual Capacity

(32) Defendant's Name: K. Petersen
Official Position: Correctional Officer Sergeant
Employed at: Santa Rosa C.I.
Mailing Address: 5850 E. Milton Road
                            Milton, Florida 32583
Individual Capacity

(33) Defendant's Name: Property Room Ofc. Johnson
Official Position: Correctional Officer
Employed at: Santa Rosa C.I.
Mailing Address: 5850 E. Milton Road
                            Milton, Florida 32583
Individual Capacity

3(c)

(34) Defendant's Name: Joshua Bert
Official Position: Academic Teacher
Employed at: Santa Rosa C.I.
Mailing Address: 5850 E. Milton Road
                        Milton, Florida 32583
Individual Capacity

(34) Defendant's Name: Florida Department of
Corrections
Official Position: Government Entity
Employed at: Santa Rosa C.I.
Mailing Address: 5850 E. Milton Road
                        Milton, Florida 32583
Individual Capacity

(35) Defendant's Name: Kerry Rozier
Official Position: Computer Systems Analyst
Employed at: Santa Rosa C.I.
Mailing Address: 5850 E. Milton Road
                        Milton, Florida 32583
Individual Capacity

(36) Defendant's Name: S. Melvin
Official Position: ARNP
Employed at: Santa Rosa C.I.
Mailing Address: 5850 E. Milton Road
                        Milton, Florida 32583
Individual Capacity

(37) Defendant's Name: D North
Official Position: Registered Nurse
Employed at: Santa Rosa C.I.
Mailing Address: 5850 E. Milton Road
                        Milton, Florida 32583
Individual Capacity

(38) Defendant's Name: Lehman
Official Position: LPN
Employed at: Santa Rosa C.I.
Mailing Address: 5850 E. Milton Road
                        Milton, Florida 32583
Individual Capacity

Are you bringing suit against (*check all that apply*):

☐ Federal Officials (*Bivens case*)    √ State/Local Officials (*§ 1983 case*)

## III. PRISONER STATUS

Indicate whether you are a prisoner, detainee, or in another confined status:

☐ Pretrial Detainee                    ☐ Civilly Committed Detainee

√ Convicted State Prisoner             ☐ Convicted Federal Prisoner

☐ Immigration Detainee                 ☐ Other (*explain below*):

_____

_____

## IV. STATEMENT OF FACTS

Provide a short and plain statement of the *facts* which show why you are entitled to relief. Describe how *each* Defendant was involved and what each person did, or did not do, in support of your claim. Identify when and where the events took place, and state how each Defendant caused you harm or violated federal law. Write each statement in short numbered paragraphs, limited as far as practicable to a single event or incident. *Do not make legal argument, quote cases, cite to statutes, or reference a memorandum.* You may make copies of the following page if necessary to supply all the facts. Barring extraordinary circumstances, no more than five (5) additional pages

should be attached. *Facts not related to this same incident or issue must be addressed in a separate civil rights complaint.*

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**PLEASE SEE ATTACHED PAGES 5(A) – 5(I)**

_____

_____

_____

_____

_____

_____

## IV. STATEMENT OF FACTS

1. On June 17, 2019, Plaintiff a transgender inmate submitted a grievance against Santa Rosa C.I. Laundry Sergeant Linda Jordan for utilizing vulgar language towards her. The next time she saw her grievance was on June 21, 2019 when Captain Schrock, Lieutenant Norris, Sergeant Jordan, Frame and Officer Perkins confronted her in the Santa Rosa C.I. Main Unit Library. Captain Schrock placed her into hand restraints, then escorted her to Perkins's office where they all surrounded her.

2. Schrock confronted her with the grievance, informed her that it had not been logged, ripped it up and stated that they were about to beat her ass for writing the grievance. Plaintiff remained silent, which angered Schrock. He picked her up and slammed her to the ground, causing her ankle to strike the floor and make a loud popping noise.

3. Schrock, Norris, Jordan, Frame and Perkins all began punching, kicking and stomping Plaintiff until she lost consciousness, when she regained it they were still beating her, threatening to beat her again and kill her if she wrote another grievance against them, Jordan or if her mother called Schrock or Norris again.

4. Plaintiff requested medical attention, which they denied. Captain Schrock punched her in the mouth with a closed fist threatening to beat her again if she did not go to her dormitory. Out of fear for her life, safety and well-being, coupled with Schrock's threat of further bodily harm, Plaintiff did not grieve the beating or mention the beating when she complained of ankle pain that was the result of the beating during her medical callout in June of 2019. A subsequent x-ray performed on Plaintiff on July 3, 2019 indicated that she sustained a high ankle sprain/injury, as well as, a chronic fracture deformity.

5. On August 16, 2019, Frame confronted Plaintiff claiming that she snitched Frame out. Plaintiff denied the allegations and Frame became irate, then summoned her friend Correctional Officer Krystal Perkins, who led Plaintiff to her office.

6. Plaintiff attempted explaining to Perkins what occurred between her and Frame, but Perkins ignored her, slapped her in the face, stating that she never like Plaintiff's "faggot ass" and was going to have her "fucked up" that day. Perkins left her office, then returned with Major Oakes and Lieutenant Moss. Major Oakes placed her into hand restraints, then led her to the main hallway entrance of the Santa Rosa C.I. Main Unit Academic

Building. Oakes, Moss, Perkins and Frame surrounded her stating that they were about to fuck her faggot ass up.

7. Oakes struck Plaintiff in the face with a closed fist stating "Where he's from they hang faggots by their fucking balls" Oakes began choking Plaintiff until she couldn't breathe, then slammed the back of her head against the wall until she nearly lost consciousness. Oakes punched Plaintiff in the stomach, Frame kicked her in the testicles causing Plaintiff to fall to the ground and strike her head on the floor.

8. Oakes, Moss, Perkins and Frame punched, kicked and stomped Plaintiff about her face, head, neck, stomach, testicles, back and legs as Plaintiff laid on the ground restrained as they referred to Plaintiff as a "Fucking Faggot" "Godamn Sissy" "Fucking Nigger" and "Peter Puffer" amongst other racial slurs as Vickie Caile, Joshua Burt and Officer Johnson witnessed the entire incident chanting "Get that nigger!" "Beat that Faggot!"

9. Oakes threatened to beat her into a coma or have his "boys" "fuck [Plaintiff's] black ass up" if she reported or attempted reporting the beating.

10. Oakes also stated that if she attempted reporting the beating to any staff member that he would know, the staff member she attempts reporting it to would beat her or have her beat, he told her that if she attempted writing a grievance it would never make it anywhere, never be logged, the grievance would be brought to him and she would be beat again.

11. Later that same day Plaintiff attempted reporting the incident and beating to Senior Inspector General's J. Baxley and Mary Kate Gustafson-Devine. They both stated that "Faggots" get no sympathy from them, the officer's could kill plaintiff's faggot ass and get away with it, because they would cover up for the officer's. The inspector's boasted about how they covered up things for officer's all the time and how they were "one big family with the officer's", "held grudges" and "stuck together".

12. Baxley and Gustafson threatened to "hide" plaintiff in confinement for 6 months, have her taken care of with an "ass whooping" by Oakes and his boys on his "Hit Crew". Baxley and Gustafson-Devine convened with Oakes, Moss, Perkins and Frame where they informed them that Plaintiff attempted reporting the beating.

13. Major Oakes immediately confronted Plaintiff asking her if she thought that he was something to be played with. She remained silent, Oakes punched her in the face with a closed fist, yelling "Answer me Faggot!"

14. Later that day, Clemmons, Childs, Oakes, Baxley, Gustafson-Devine, Manners, Boatwright and Rozier convened in the Main Unit Law Library upon conclusion of the noon meal feeding. At approximately 1:45-2:20 p.m. all inmates with the exception of Plaintiff were ordered to return to their dormitories. Manners placed Plaintiff into hand restraints and ordered her to have a seat in a nearby chair. Oakes, Rozier, Gustafson-Devine, Baxley, Asbell, Perkins, Boatwright, Manners, Frame, Clemmons and Childs conferred and discussed how they were going to beat Plaintiff, then surrounded her.

15. Clemmons and Childs approached Plaintiff stating "We hate you fags!" "Your no good for our world!" "You're the cause of AIDS!" Clemmons punched Plaintiff in her jaw with a closed fist stating "Being a Faggot is an abomination!" Childs kicked her in the side of her face, referring to her as a "Godamn Faggot" causing her to fall from the chair, injuring her right shoulder. Clemmons and Childs repeatedly punched and kicked her before yelling "Beat this nigger!" "Beat the faggot out of em!" "Get that queer sodomite!" Rozier kicked her in the face wit his Lime Green/Blue Nike Running Tennis shoe, causing her nose to make a loud crunching noise, bleed and cause difficulty breathing.

16. Oakes, Moss, Perkins, Frame, Asbell, Boatwright and Manners repeatedly kicked, punched and stomped Plaintiff as she laid on the ground restrained as they referred to her as a "Fucking Queer" "Godamn Nigger" "Fucking Faggot" "Sodomite" and "Fuck Ass Sissy". Afterwards, Plaintiff was denied medical attention for her injured shoulder and threatened that she would be beat into a coma if she opened her mouth about the beating or she would receive another one. Clemmons and Childs witnessed the entire incident and told Plaintiff that she could either go to her dormitory and clean herself up or she could go to the morgue.

17. Upon conclusion of the 3pm count several officer's came to Plaintiff's dorm and escorted her to the Captain's Office where Lieutenant's Dice and Patrick-Hughes informed Plaintiff that she was going to confinement per the orders of Clemmons, Childs, Oakes, Moss, Baxley and Gustafson-Devine.

18. They placed her into full restraints (hand and ankle), then led her outside where Cowart, Lister, Brazwell and Anderson awaited. As she was led by them Cowart stepped onto her leg restraints causing Plaintiff to fall, striking her face on the concrete. Hughes, Lister, Brazwell, Anderson and Cowart punched, kicked and stomped Plaintiff as Dice slammed her head into the ground and burned her with a cigarette. During the beating one of her ribs broke making a loud popping noise, causing Plaintiff to not only scream in pure agony from the severe, debilitating pain, but she began vomiting blood and fluids.

19. Hughes and Cowart forced her from the ground, dragging her towards the Center Gate, ignoring all of her pleas for medical attention for her broken arm, broken ribs, shoulder, difficulty breathing and her lip which was split inside and out. Dice became agitated with her pleas, stepped onto her leg restraints and slammed her to the ground, causing further injury, severe and debilitating pain. Sergeant Petersen repeatedly kicked Plaintiff in her face and sides referring to her as a "Lizard licking punk!"

20. Dice and Hughes repeatedly slammed their knees into her back causing Plaintiff to scream and spit up blood. They told Plaintiff they'd give her their own medical attention. Dice and Hughes forced her pants and underwear down, exposing her buttocks. Dice roughly shoved his gloved fingers into plaintiff's rectum, moving them in and out in a rough manner. Hughes forced his hand between Plaintiff's thighs, grabbed her penis and testicles then began violently jerking them. These actions caused Plaintiff to scream in agony from the severe, debilitating pain. Hooper kicked Plaintiff twice in the face, spat in her face and called Plaintiff a "Godamn Sissy!"

21. Plaintiff continued pleading for medical attention and they refused, Moss arrived at the center gate and began walking circles around plaintiff, kicking her shouting "stop resisting queer!". Dice and Hughes forced her up from the ground, denied her medical attention, denied her from receiving a pre-confinement physical and drug her towards Santa Rosa Annex, slamming her to the ground along the way as enraged inmates yelled from dormitory windows.

22. Turner, Grant, Veazey, Lusk, Slatter and Medlock awaited her arrival in the K-Dorm hallway. Plaintiff was led into the laundry room where she was sprayed with chemical agents by Grant at the direction of Turner, Dice and Hughes, then assaulted by Lusk, Veazey, Slatter and Medlock. They took turns punching, kicking and stomping plaintiff

5(d)

23. until she lost her bowels. They also burned her fingertips with a lighter and threatened to do it again if she wrote or attempted any grievances concerning the abuse that she endured that day.

24. Plaintiff was denied a decontamination shower and forced to lie on the floor of cell K1-209 in a puddle of blood, dried fecal matter and urine that was caked to her groin buttocks and clothing. Plaintiff pled with Turner, Grant, Lusk, Veazey, Slatter and Medlock for medical attention and a decontamination shower. They all laughed at her chanting "Burn Faggot Burn!" "Welcome To Hell!"

25. They moved her into cell K4-108 which had feces smeared over the walls and starved her the entire weekend. Plaintiff suffered significant diminished vision, chemical burns to her face, burns to her fingertips, she vomited and urinated blood, experienced excessive blood in her bowels, along with severe, chronic debilitating pain during bowel movements, difficulty making bowel movements and urinating.

26. To this day Plaintiff's face around her nose remains discolored due to the chemical burns that lasted several months, along with excessive amounts of blood in her urine and bowels, severe, chronic, debilitating pain and difficulty making a bowel movement and urinating which are both permanent and ongoing.

27. On August 16, 2019 after borrowing a pen and grievance forms from another inmate plaintiff attempted submitting grievances to the institution, Secretary of FDC Mark S. Inch and Inspector General Lester Fernandez. Senior Classification Officer J. Dix refused collecting her grievances, continued walking pass her cell, stating "you were warned" "now you're going to starve faggot" "you know I used to be a sergeant right" "I have friends in security".

28. Plaintiff and her roommate were given empty trays at meal feeding time. Another inmate volunteered to submit Plaintiff's grievances for her. Mr. Dix collected the grievances from the other inmate, opened them up and began reading them in front of the entire wing. He accused plaintiff and the other inmate of attempting to pull a "fast one" Dix placed the grievances in his pocket and walked away stating he has something for them both. Plaintiff, her roommate and the other inmate were starved several meals for attempting to file the grievances

5(e)

29. During the early morning hours of August 22, 2019 Captain J. Carr and an unknown officer escorted Plaintiff to the center gate at Santa Rosa Main Unit. Tucker, Morgan and Mackall were waiting for her arrival. Morgan approached her stating "we need to talk about these" waving the grievances that Dix placed in his pocket. When she remained silent Morgan stated "Now you don't want to talk sissy" "Do you think were soft bitch?" Morgan directed Mackall to spray plaintiff with chemical agents stating "Spray this faggot ass bitch"

30. Plaintiff was slammed to the ground, repeatedly punched and kicked, then she felt fingers being forced into her rectum forcefully causing her to scream in agony. She was kicked in the mouth and told to "Shut the fuck up". Morgan threatened her with receiving the same type of treatment again anytime she attempted grieving an Officer or Staff Member beating or abusing her.

31. Plaintiff was refused medical attention, decontamination and forced to lay on the ground for several hours. Mackall held his hand over her mouth and nose as morgan poured hot water on her intensifying the chemical agents. Carr and Tucker witnessed the entire incident and made no attempt to intervene

32. Eventually. Plaintiff was escorted to the MTC building via back door entrance because they did not want to risk anyone seeing her and cause them to do any paperwork to cover their trail for spraying her with chemical agents. Gustafson asked Morgan "Did [they] handle [them] grievances" Morgan advised her that they did and stated that Plaintiff would not be submitting any other grievances related to staff assault or abuse unless she "wanted to die".

33. Plaintiff was then interviewed by Senior Inspector Walker, where she attempted reporting the abuse that she received that morning, but she was told by Walker to "Leave It Alone" because it was the Plaintiff "against them" and that "everybody would believe [them]" Walker also advised Plaintiff that Gustafson was her "Good Friend". After the interview, Moss threatened Plaintiff with death and stated that they will stop starving and beating her when she stopped attempting to submit grievances and having her mother call the institution or they'd just beat her to death, cover it up and lie stating that she attempted attacking one of them with a weapon when they became tired of intercepting, ripping up and burning her grievances

5(f)

34. Plaintiff was escorted back to Santa Rosa C.I. Annex. Along the way Frame's boyfriend Montiel confronted her, punched her in the face, slammed her to the ground, then commenced to repeatedly punching plaintiff and kicking her in the testicles telling her to "keep [his] girl's name out of her faggot assed mouth" or he was going to "Fuck [plaintiff's] faggot ass up.

35. Although Plaintiff remained in fear of filing grievances based up her fear of being retaliated against, assaulted and starved Plaintiff still attempted submitting grievances and attempted having other inmates submit her grievances from their cells relating to the staff abuse, assaults and starvation. Her grievances were intercepted, read and destroyed. Plaintiff was also retaliated against by being starved and assaulted.

36. Anytime her grievances related to staff abuse, staff assaults, retaliation or starvation they were never placed into the grievance box or the staff member conducting grievance pick up would refuse collecting her grievance, rip it up or place it in their pocket and give it to the staff being grieved.

37. Plaintiff suffered a broken shoulder, was forced to make a homemade cast/sling to stabilize her arm, which hung limp because she was denied medical attention for that, the excessive bleeding from her rectum and tearing of her rectum, which was split due to the assaults by Dice and Morgan when they forced their fingers into her rectum and chemical burns from the chemical agents.

38. On September 29, 2019 Plaintiff mailed a letter to Inch and Fernandez via legal mail in regards to the assaults, interception of her grievances and starvation. Plaintiff's mother, sister and other family members also contacted Inch, Fernandez, Clemmons, Childs, Smith and Santiago in regards to these matters. They were told that they would look into the matters when they got to it, but never did take any action, the abuse and starvation worsened as a result of her letters, as well as, her family calling and e-mailing them.

39. Plaintiff was seen by Lehman on September 3, 2019, North on September 9, 2019, Lehman again on October 7, 2019. Plaintiff pled with them for medical attention for her arm, excessive bleeding from her rectum and split rectum as well as the chemical burns in her face. She also pled with to document her injuries

5(g)

40. Lehman and North showed officer's her sick call, then forced her to rewrite them omitting any and all allegations and statements that her injuries were the result of staff abuse because they did were not going to do all the paperwork that was required when an inmate alleged they were injured from staff assault or abuse.

41. They also stated that they were not about to lose their jobs or make enemies with the officer's over an inmate being beat by officer's. They forced her to remove her complaints of shoulder injury and pain, ignored her homemade sling, excessive bleeding from her rectum and splitting of her rectum due to staff assault, as well as her broken ribs.

42. Lehman, North and Melvin refused to document or treat her injuries, stating that they were not going to lose their jobs or make enemies for an inmate who deserved an "ass whooping". They gave her creams that worsened the burns to her face and ignored all of her other obvious injuries.

43. To this day, Plaintiff's face around her nose is discolored, severely painful, she still experiences excessive blood in her urine and bowels, severe, chronic pain when urinating or making a bowel movement, difficulty moving her arm or writing.

44. The chemical agents permanently damaged her vision to the point that she must wear corrective lenses in order for her to see due to the prolonged period of hours and days that she was exposed to the chemical agents, which also burned her face, leaving it permanently discolored.

## V. STATEMENT OF CLAIMS

State what rights under the Constitution, laws, or treaties of the United States have been violated. Be specific. If more than one claim is asserted, number each separate claim and relate it to the facts alleged in Section III. If more than one Defendant is named, indicate which claim is presented against which Defendant.

PLEASE SEE ATTACHED PAGES 7(A) – 7(O)

## VI. RELIEF REQUESTED

State briefly what relief you seek from the Court. Do not make legal arguments or cite to cases/ statutes. If requesting money damages *(either actual or punitive damages)*, include the amount sought and explain the basis for the claims.

PLEASE SEE ATTACHED PAGES 7(O)

## V. STATEMENT OF CLAIMS

Plaintiff incorporates and realleges Paragraphs 1-44

### COUNT I EXCESSIVE FORCE
### (Schrock, Norris, Jordan, Perkins and Frame)

45. Defendants Schrock, Norris, Jordan, Perkins and Frame in their individual capacities, while acting under color of law violated Plaintiff's clearly established 8th amendment rights as a prisoner to be free from excessive force, cruel and unusual punishment when they intentionally, maliciously and sadistically used excessive force against Plaintiff.

46. In June 21, 2019, Schrock picked her up and slammed her to the ground, while she was restrained, injuring her ankle. Schrock, Norris, Jordan and Frame then further used excessive force to cause further harm by intentionally, maliciously and sadistically punching, kicking and stomping plaintiff repeatedly while she was on the ground restrained, referring Plaintiff as a "Nigger Fag" "Dumb Ass Sissy" and "Fuck Boy".

47. The force was excessive, not used in a good-faith effort to restore order and discipline in a difficult situation. The force was unjustified because plaintiff was subdued, on the ground, restrained, not acting in a disruptive manner, actively resisting, disobeying any reasonable orders given, violating any rules or regulations of FDC, posed any threat to their safety, other inmates, staff or the orderly running or operation of Santa Rosa C.I.

48. Schrock, Norris, Jordan, Perkins and Frame knew and were well aware that physical harm and injury were a reasonable and foreseeable consequence of their unlawful conduct and actions. Any similarly situated reasonable government official possessing the same knowledge and in the same position would have known that using force and assaulting a prisoner by repeatedly punching, kicking and stomping them while they are subdued, restrained and physically compliant was unlawful and constituted Excessive Force, Cruel and Unusual Punishment.

49. Schrock, Norris, Jordan, Perkins and Frame's actions resulted in the unnecessary, wanton infliction of severe, excruciating pain and suffering, permanent physical injury, severe, chronic daily ongoing chronic pain, mental anguish, aggravation of an existing chronic condition in her right ankle, diminished physical capabilities, loss of capacity for the enjoyment of life, permanent disfigurement, disability and inconvenience.

## COUNT II STATE LAW BATTERY

## (Schrock, Norris, Jordan, Perkins and Frame)

50. Defendant's Schrock, Norris, Jordan, Perkins and Frame did intentionally commit a Battery against Plaintiff on June 17, 2019.

51. Schrock's act(s) of picking Plaintiff up, slamming her to the ground, causing physical injury to her right ankle, then repeatedly punching, kicking and stomping while she was on the ground restrained in concert with Norris, Jordan, Perkins and Frame resulted in unwanted, unlawful physical contact with Plaintiff that she did not consent to and was harmful.

52. Defendant's intended making their unwanted physical contact with Plaintiff harmful, knew that it would cause harmful contact with her and physical injury.

53. Their unwanted, unlawful and non-consensual contact with Plaintiff was harmful, caused severe excruciating intolerable pain, permanent physical injury and disfigurement, mental anguish, loss of capacity for enjoyment of life, aggravation of an existing condition and inconvenience. Plaintiff's injuries are permanent in nature, will continue into the future and impact her.

## COUNT III STATE LAW BATTERY

## (Frame, Oakes, Moss, Perkins, Asbell, Rozier, Manners, Boatwright, Clemmons and Childs)

54. Defendant's Frame, Oakes, Moss, Perkins, Asbell, Rozier, Manners, Boatwright, Clemmons and Childs did commit a Battery against Plaintiff on August 16, 2019.

55. Oakes punched Plaintiff in the face with a closed fist, choked her, repeatedly slammed her head against a wall, Frame repeatedly kicked her in the testicles, then Frame, Oakes, Moss, and Perkins repeatedly punched, kicked and stomped Plaintiff about her face, head, neck, stomach, testicles, back and legs as she laid on the ground, restrained.

56. Clemmons punched her in the jaw with a closed fist, Childs kicked her in the sides of her head, Rozier kicked her in the face, then Oakes, Moss, Perkins, Asbell, Rozier, Boatwright, Manners and Frame repeatedly punched, kicked and stomped Plaintiff as she laid on the ground restrained.

57. Their acts resulted in unwanted and unlawful physical contact with Plaintiff that she did not consent to and was harmful.

58 84. Defendant's intended making their unwanted physical contact with Plaintiff harmful, knew that it would cause harmful contact with her and physical injury.

59 55. Their unwanted, unlawful and non-consensual contact with Plaintiff was harmful, caused severe excruciating intolerable pain, permanent physical injury and disfigurement, mental anguish, loss of capacity for enjoyment of life, aggravation of an existing condition and inconvenience. Plaintiff's injuries are permanent in nature, will continue into the future and impact her.

## COUNT IV STATE LAW BATTERY

### (Dice, Hughes, Lister, Brazwell, Anderson, Cowart, Hooper, Petersen and Moss)

60 56. Defendant's Dice, Hughes, Lister, Brazwell, Anderson, Cowart, Hooper, Petersen and Moss did commit a Battery against Plaintiff on August 16, 2019.

61 49. Hughes, Lister, Brazwell, Anderson and Cowart punched, kicked and stomped Plaintiff as Dice constantly slammed her head into the ground and burned her in the face with a cigarette. Petersen, Hooper and Moss kicked her as she laid on the ground restrained. Dice roughly forced his fingers into her rectum, as Hughes grabbed Plaintiff's penis, testicles, violently jerking them, Hooper spat in her face.

62 50. Their acts resulted in unwanted and unlawful physical contact with Plaintiff that she did not consent to and was harmful.

63 51. Defendant's intended making their unwanted physical contact with Plaintiff harmful, knew that it would cause harmful contact with her and physical injury.

64 52. Their unwanted, unlawful and non-consensual contact with Plaintiff was harmful, caused severe excruciating intolerable pain, permanent physical injury and disfigurement, mental anguish, loss of capacity for enjoyment of life, aggravation of an existing condition and inconvenience. Plaintiff's injuries are permanent in nature, will continue into the future and impact her.

## COUNT V RETALIATION

### (Schrock, Norris, Jordan, Perkins and Frame, Morgan and Mackall)

65 53. Schrock, Norris, Jordan, Perkins and Frame in their individual capacities, while acting under color of law assaulted Plaintiff, and used excessive force against her while she was restrained in retaliation for exercising her clearly established First Amendment Rights by engaging in protected speech and utilizing the prison grievance system at Santa Rosa C.I.

54. To complain regarding her conditions of confinement as to Defendant Jordan using abusive, vulgar, threatening language towards her and being assaulted by staff in violation of her First Amendment rights as a prisoner.

55. Schrock, Norris, Jordan, Perkins and Frame confronted Plaintiff on June 21, 2019 with her grievance that had not been logged, Schrock ripped it up, handcuffed her, then Schrock, Norris, Jordan, Perkins and Frame assaulted her by punching and kicking her as she laid on the ground restrained.

56. On August 22, 2019 Morgan and Mackall confronted Plaintiff and Mackall sprayed her in the face with chemical agents, she was slammed to the ground, repeatedly kicked, punched, sexually assaulted by fingers being forced into her rectum, kicked in the mouth when she screamed and threatened with further abuse every time she attempted grieving an officer or staff member assaulting or abusing her.

57. Plaintiff's grievances, which were intercepted, never logged and destroyed were the primary motivating factor in Schrock, Norris, Jordan, Perkins, Frame, Mackall and Morgan's decision to retaliate against Plaintiff for writing and attempting to submit grievances by assaulting her.

58. Defendant's conduct of confronting Plaintiff with her intercepted grievances, destroying them by ripping them up, then handcuffing her and using excessive force by physically and sexually assaulting her while she was restrained for lodging the grievances would more than likely deter any similarly situated person from engaging in protected free speech by engaging in the utilization of the prison grievance system at Santa Rosa C.I. to complain about their conditions of confinement, which is constitutionally protected speech.

59. Defendant's retaliatory actions resulted in Plaintiff suffering permanent physical injury to her right ankle, rectum, aggravation of an existing chronic condition in her right ankle, permanent physical impairment, disfigurement, mental anguish, loss of capacity for the enjoyment of life and inconvenience.

## COUNT VI RETALIATION
### (Morgan and Mackall)

74 45. Morgan and Mackall in their individual capacities, while acting under color of law assaulted Plaintiff, and used excessive force against her while she was restrained in retaliation for exercising her clearly established First Amendment Rights by engaging in protected speech and utilizing the prison grievance system at Santa Rosa C.I. to complain regarding her conditions of confinement as to Defendant Jordan using abusive, vulgar, threatening language towards her and being assaulted by staff in violation of her First Amendment rights as a prisoner.

72 46. On August 22, 2019 Morgan and Mackall confronted Plaintiff and Mackall sprayed her in the face with chemical agents, she was slammed to the ground, repeatedly kicked, punched, sexually assaulted by fingers being forced into her rectum, kicked in the mouth when she screamed and threatened with further abuse every time she attempted grieving an officer or staff member assaulting or abusing her.

73 47. Plaintiff's grievances, which were intercepted, never logged and destroyed were the primary motivating factor in Mackall and Morgan's decision to retaliate against Plaintiff for writing and attempting to submit grievances by assaulting her.

74 48. Morgan and Mackall's conduct of confronting Plaintiff with her intercepted grievances, destroying them by ripping them up, then handcuffing her and using excessive force by physically and sexually assaulting her while she was restrained for lodging the grievances would more than likely deter any similarly situated person from engaging in protected free speech by engaging in the utilization of the prison grievance system at Santa Rosa C.I. to complain about their conditions of confinement, which is constitutionally protected speech.

75 49. Defendant's retaliatory actions resulted in Plaintiff suffering permanent physical injury to her right ankle, rectum, aggravation of an existing chronic condition in her right ankle, permanent physical impairment, disfigurement, mental anguish, loss of capacity for the enjoyment of life and inconvenience.

## COUNT VII EXCESSIVE FORCE

### (Frame, Oakes, Moss, Perkins, Asbell, Rozier, Manners, Boatwright, Clemmons, Childs, Dice, Hughes, Lister, Brazwell, Anderson, Cowart, Hooper and Petersen)

76 50. On August 16, 2019, Defendants Frame, Oakes, Moss, Perkins, Asbell, Rozier, Manners, Boatwright, Clemmons, Childs, Dice, Hughes, Lister, Brazwell, Anderson, Cowart, Hooper and Petersen in their individual capacities, while acting under color of law violated Plaintiff's clearly established 8th amendment rights as a prisoner to be free from excessive force, cruel and unusual punishment when they intentionally, maliciously and sadistically used excessive force against Plaintiff.

77 51. On that morning Frame, Oakes, Moss and Perkins punched, kicked and stomped Plaintiff while she was on the ground restrained.

78 52. Later on the same date Clemmons punched her in the jaw with a closed fist and Childs kicked her in the side of her head all while she was restrained.

79 53. Oakes, Moss, Asbell, Perkins, Rozier, Boatwright, Manners and Frame punched, kicked and stomped plaintiff while she was restrained on the ground.

80 54. Hughes, Lister, Brazwell, Anderson and Cowart punched, kicked and stomped Plaintiff while she was on the ground restrained as Dice repeatedly slammed her head into the pavement.

81 55. Dice and Hughes also used excessive force to further cause harm when Dice forced his fingers into her rectum, as Hughes grabbed her penis, testicles and jerked them violently while she was on the ground restrained.

82 56. Hooper kicked Plaintiff twice in the face, spat in her face and called Plaintiff a "Godamn Sissy!" as she lay on the ground restrained.

83 57. Petersen repeatedly kicked Plaintiff in her face and sides referring to her as a "Lizard licking punk!" as she lay on the ground restrained.

84 58. The force was excessive, not used in a good-faith effort to restore order and discipline in a difficult situation. The force was unjustified because plaintiff was subdued, on the ground, restrained, not acting in a disruptive manner, actively resisting, disobeying any reasonable orders given, violating any rules or regulations of FDC, posed any threat to their safety, other inmates, staff or the orderly running or operation of Santa Rosa C.I.

8659. Frame, Oakes, Moss, Perkins, Asbell, Rozier, Maners, Boatwright, Clemmons, Childs, Dice, Hughes, Lister, Brazwell, Anderson, Cowart, Hooper and Petersen knew and were well aware that physical harm and injury were a reasonable and foreseeable consequence of their unlawful conduct and actions. Any similarly situated reasonable government official possessing the same knowledge and in the same position would have known that using force and assaulting a prisoner by repeatedly punching, kicking and stomping them while they are subdued, restrained and physically compliant was unlawful and constituted Excessive Force, Cruel and Unusual Punishment.

8660. Frame, Oakes, Moss, Perkins, Asbell, Rozier, Maners, Boatwright, Clemmons, Childs, Dice, Hughes, Lister, Brazwell, Anderson, Cowart, Hooper and Petersen's actions resulted in the unnecessary, wanton infliction of severe, excruciating pain and suffering, permanent physical injury, severe, chronic daily ongoing chronic pain, mental anguish, aggravation of an existing chronic condition in her right ankle, diminished physical capabilities, loss of capacity for the enjoyment of life, permanent disfigurement, disability and inconvenience.

## COUNT VIII EXCESSIVE FORCE
### (Turner, Lusk, Veazey, Slatter, Medlock and Grant)

5761. On August 16, 2019 Defendants Turner, Lusk, Veazey, Slatter, Medlock and Grant in their individual capacities, while acting under color of law violated Plaintiff's clearly established 8th amendment rights as a prisoner to be free from excessive force, cruel and unusual punishment when they intentionally, maliciously and sadistically used excessive force against Plaintiff.

7862. Turner ordered Grant to spray Plaintiff with chemical agents while she was restrained and physically compliant. Lusk, Veazey, Slatter and Medlock punched, kicked and stomped Plaintiff until she lost her bowels. They also burned her fingertips with a lighter.

8963. The force was excessive, not used in a good-faith effort to restore order and discipline in a difficult situation. The force was unjustified because plaintiff was subdued, on the ground, restrained, not acting in a disruptive manner, actively resisting, disobeying any reasonable orders given, violating any rules or regulations of FDC, posed any threat to their safety, other inmates, staff or the orderly running or operation of Santa Rosa C.I..

40 64. Turner, Lusk, Veazey, Slatter, Medlock and Grant knew and were well aware that physical harm and injury were a reasonable and foreseeable consequence of their unlawful conduct and actions. Any similarly situated reasonable government official possessing the same knowledge and in the same position would have known that using force and assaulting a prisoner by repeatedly punching, kicking and stomping them while they are subdued, restrained and physically compliant was unlawful and constituted Excessive Force, Cruel and Unusual Punishment.

91 65. Turner, Lusk, Veazey, Slatter, Medlock and Grant's actions resulted in the unnecessary, wanton infliction of severe, excruciating pain and suffering, permanent physical injury, severe, chronic daily ongoing chronic pain, mental anguish, aggravation of an existing chronic condition in her right ankle, diminished physical capabilities, loss of capacity for the enjoyment of life, permanent disfigurement, disability and inconvenience.

## COUNT IX EXCESSIVE FORCE
### (Mackall and Morgan)

92 45. On August 22, 2019 Defendants Mackall and Morgan in their individual capacities, while acting under color of law violated Plaintiff's clearly established 8th amendment rights as a prisoner to be free from excessive force, cruel and unusual punishment when they intentionally, maliciously and sadistically used excessive force against Plaintiff.

93 46. Mackall sprayed Plaintiff with chemical agents while she was restrained and physically compliant.  Morgan and Mackall also punched and kicked her after she was slammed on the ground, while restrained, then Morgan caused her further harm by forcing his fingers into her rectum.

94 47. The force was excessive, not used in a good-faith effort to restore order and discipline in a difficult situation. The force was unjustified because plaintiff was subdued, on the ground, restrained, not acting in a disruptive manner, actively resisting, disobeying any reasonable orders given, violating any rules or regulations of FDC, posed any threat to their safety, other inmates, staff or the orderly running or operation of Santa Rosa C.I..

95 48. Morgan and Mackall knew and were well aware that physical harm and injury were a reasonable and foreseeable consequence of their unlawful conduct and actions. Any similarly situated reasonable government official possessing the same knowledge and in the same position would have known that using force and assaulting a prisoner by

49. repeatedly punching, kicking and stomping them , then forcing their fingers into their rectum while they are subdued, restrained and physically compliant was unlawful and constituted Excessive Force, Cruel and Unusual Punishment.

50. Morgan and Mackall's actions resulted in the unnecessary, wanton infliction of severe, excruciating pain and suffering, permanent physical injury, severe, chronic daily ongoing chronic pain, mental anguish, aggravation of an existing chronic condition in her right ankle, diminished physical capabilities, loss of capacity for the enjoyment of life, permanent disfigurement, disability and inconvenience.

## COUNT X STATE LAW BATTERY
### (Lusk, Veazey, Slatter, Medlock and Grant)

51. Defendant's Lusk, Veazey, Slatter, Medlock and Grant did commit a Battery against Plaintiff on August 16, 2019.

66. Grant's act of spraying Plaintiff with chemical agents, while she was subdued restrained and physically compliant resulted in unwanted, unlawful physical contact with Plaintiff that she did not consent to and it was harmful. Lusk, Veazey, Slatter and Medlock's acts of punching, kicking and stomping Plaintiff until she lost her bowels, then burning her fingertips with a lighter, ,while she was subdued and restrained resulted in unwanted and unlawful physical contact with Plaintiff that she did not consent to and was harmful.

67. Lusk, Veazey, Slatter, Medlock and Grant acts resulted in unwanted and unlawful physical contact with Plaintiff that she did not consent to and was harmful.

68. Lusk, Veazey, Slatter, Medlock and Grant intended making their unwanted physical contact with Plaintiff harmful, knew that it would cause harmful contact with her and physical injury.

69. Lusk, Veazey, Slatter, Medlock and Grant's unwanted, unlawful and non-consensual contact with Plaintiff was harmful, caused severe excruciating intolerable pain, permanent physical injury and disfigurement, mental anguish, loss of capacity for enjoyment of life, aggravation of an existing condition and inconvenience. Plaintiff's injuries are permanent in nature, will continue into the future and impact her.

## COUNT XI STATE LAW BATTERY
### (Mackall and Morgan)

69. Defendant's Mackall and Morgan did commit a Battery against Plaintiff on August 22, 2019.

70. Mackall's act's of spraying her in the face with chemical agents, then punching and kicking her after she was slammed to the ground resulted in unwanted, unlawful physical contact that she did not consent to and was harmful.

71. Morgan's act of forcing his fingers into her rectum as Mackall kicked her in the mouth resulted in unwanted, unlawful physical contact that she did not consent to and it was harmful.

72. Mackall and Morgan's acts resulted in unwanted and unlawful physical contact with Plaintiff that she did not consent to and was harmful.

73. Mackall and Morgan intended making their unwanted physical contact with Plaintiff harmful, knew that it would cause harmful contact with her and physical injury.

74. Mackalla and Morgan's unwanted, unlawful and non-consensual contact with Plaintiff was harmful, caused severe excruciating intolerable pain, permanent physical injury and disfigurement, mental anguish, loss of capacity for enjoyment of life, aggravation of an existing condition and inconvenience. Plaintiff's injuries are permanent in nature, will continue into the future and impact her.

## COUNT XII FAILURE TO INTERVENE
### (Asbell, Caile, Burt and Johnson)

75. Defendants Asbell, Burt, Johnson and Caile in their individual capacities, while acting under color of law failed to intervene on August 16, 2019 when Oakes, Moss, Perkins, and Frame violated Plaintiff's clearly established 8th amendment rights as a prisoner to be free from excessive force, cruel and unusual punishment when they intentionally, maliciously and sadistically used excessive force against Plaintiff.

76. Asbell, Burt, Johnson and Caile's failure to act caused Plaintiff to sustain and suffer physical injuries that were a reasonably foreseeable consequence of their failure to act or intervene when Oakes, Moss, Perkins, and Frame violated Plaintiff's clearly established 8th amendment rights as a prisoner when they used excessive force against her.

77. Asbell, Burt, Johnson and Caile knew that excessive force would be used against her, they saw and witnessed excessive force being used against her, had more than a realistic opportunity to prevent harm from occurring to Plaintiff. They intentionally and deliberately failed taking any reasonable steps to prevent harm from occurring to her.

78. Asbell, Burt, Johnson and Caile's failure to act caused Plaintiff to sustain and suffer permanent physical harm and injury that were reasonably foreseeable consequences of their failure to act or intervene when Oakes, Moss, Perkins, and Frame violated Plaintiff's clearly established 8th amendment rights as a prisoner to be free from excessive force, cruel and unusual punishment when they intentionally, maliciously and sadistically used excessive force against Plaintiff.

79. Plaintiff sustained severe, excruciating chronic pain, permanent physical injury and disfigurement to her body and rectum, loss of the capacity for the enjoyment of life and inconvenience because of their failure to intervene or act.

80. Similarly situated government officials under the same circumstances, possessing the same knowledge as Defendant's would have known that their failure to act or intervene was unlawful, violatile of Plaintiff's clearly established 8th amendment rights as a prisoner to be free from excessive force, cruel and unusual punishment.

## COUNT XIII FAILURE TO INTERVENE
### (Tucker and Carr)

45. Defendants Tucker and Carr in their individual capacities, while acting under color of law failed to intervene on August 22, 2019 when Morgan and Mackall violated Plaintiff's clearly established 8th amendment rights as a prisoner to be free from excessive force, cruel and unusual punishment when they intentionally, maliciously and sadistically used excessive force against Plaintiff.

46. Tucker and Carr's failure to act caused Plaintiff to sustain and suffer physical injuries that were a reasonably foreseeable consequence of their failure to act or intervene when Oakes, Moss, Perkins, and Frame violated Plaintiff's clearly established 8th amendment rights as a prisoner when they used excessive force against her.

47. Tucker and Carr knew that excessive force would be used against her, they saw and witnessed excessive force being used against her, had more than a realistic opportunity to

**Q**. prevent harm from occurring to Plaintiff. They intentionally and deliberately failed taking any reasonable steps to prevent harm from occurring to her.

119 49. Tucker and Carr's failure to act caused Plaintiff to sustain and suffer permanent physical harm and injury that were reasonably foreseeable consequences of their failure to act or intervene when Oakes, Rozier, Asbell, Perkins, Boatwright, Manners, Frame, Clemmons and Childs violated Plaintiff's clearly established 8th amendment rights as a prisoner to be free from excessive force, cruel and unusual punishment when they intentionally, maliciously and sadistically used excessive force against Plaintiff.

148 50. Plaintiff sustained severe, excruciating chronic pain, permanent physical injury and disfigurement to her body and rectum, loss of the capacity for the enjoyment of life and inconvenience because of their failure to intervene or act.

149 51. Similarly situated government officials under the same circumstances, possessing the same knowledge as Defendant's would have known that their failure to act or intervene was unlawful, violatile of Plaintiff's clearly established 8th amendment rights as a prisoner to be free from excessive force, cruel and unusual punishment.

## COUNT XIV FAILURE TO INTERVENE
### (Baxley, Gustafson-Devine)

120 45. Defendants Baxley and Gustafson in their individual capacities, while acting under color of law failed to intervene on August 16, 2019 when Oakes, Rozier, Asbell, Perkins, Boatwright, Manners, Frame, Clemmons and Childs violated Plaintiff's clearly established 8th amendment rights as a prisoner to be free from excessive force, cruel and unusual punishment when they intentionally, maliciously and sadistically used excessive force against Plaintiff.

121 46. Baxley and Gustafson - Devine's failure to act caused Plaintiff to sustain and suffer physical injuries that were a reasonably foreseeable consequence of their failure to act or intervene when Oakes, Rozier, Asbell, Perkins, Boatwright, Manners, Frame, Clemmons and Childs Plaintiff's clearly established 8th amendment rights as a prisoner when they used excessive force against her.

122 47. Baxley and Gustafson-Devine knew that excessive force would be used against her, they saw and witnessed excessive force being used against her, had more than a realistic

47. opportunity to prevent harm from occurring to Plaintiff. They intentionally and deliberately failed taking any reasonable steps to prevent harm from occurring to her.

128 49. Baxley and Gustafson - Devine's failure to act caused Plaintiff to sustain and suffer permanent physical harm and injury that were reasonably foreseeable consequences of their failure to act or intervene when Oakes, Rozier, Asbell, Perkins, Boatwright, Manners, Frame, Clemmons and Childs violated Plaintiff's clearly established 8th amendment rights as a prisoner to be free from excessive force, cruel and unusual punishment when they intentionally, maliciously and sadistically used excessive force against Plaintiff.

124 50. Plaintiff sustained severe, excruciating chronic pain, permanent physical injury and disfigurement to her body and rectum, loss of the capacity for the enjoyment of life and inconvenience because of their failure to intervene or act.

125 51. Similarly situated government officials under the same circumstances, possessing the same knowledge as Defendant's would have known that their failure to act or intervene was unlawful, violatile of Plaintiff's clearly established 8th amendment rights as a prisoner to be free from excessive force, cruel and unusual punishment.

## COUNT XV GOVERNMENT ENTITY LIABILITY FOR FAILURE TO TRAIN OR SUPERVISE

### (Florida Department of Corrections)

126 52. The Florida Department of Corrections is liable for failing to adequately train and supervise Defendant's Schrock, Norris, Jordan, Perkins, Frame, Oakes, Moss, Asbell, Rozier, Manners, Boatwright, Clemmons, Childs, Dice, Hughes, Lister, Brazwell, Anderson, Cowart, Hooper, Petersen, Moss Lusk, Veazey, Slatter, Medlock and Grant.

127 53. This failure caused Schrock, Norris, Jordan, Perkins, Frame, Oakes, Moss, Asbell, Rozier, Manners, Boatwright, Clemmons, Childs, Dice, Hughes, Lister, Brazwell, Anderson, Cowart, Hooper, Petersen, Moss Lusk, Veazey, Slatter, Medlock and Grant to violate Plaintiff's clearly established rights Eighth Amendment rights to be free from excessive force, cruel and unusual punishment.

128 54. Defendant's Schrock, Norris, Jordan, Perkins, Frame, Oakes, Moss, Asbell, Rozier, Manners, Boatwright, Clemmons, Childs, Dice, Hughes, Lister, Brazwell, Anderson, Cowart, Hooper, Petersen, Moss Lusk, Veazey, Slatter, Medlock and Grant Defendants

55. Baxley and Gustafson in their individual capacities, while acting under color of law violated Plaintiff's clearly established Eighth Amendment Right to be free from excessive force, cruel and unusual punishment.

129 56. Schrock, Norris, Jordan, Perkins, Frame, Oakes, Moss, Asbell, Rozier, Manners, Boatwright, Clemmons, Childs, Dice, Hughes, Lister, Brazwell, Anderson, Cowart, Hooper, Petersen, Moss, Lusk, Veazey, Slatter, Medlock and Grant were not adequately trained in the relevant area regarding use of force and permissible uses of force.

130 57. Mark S. Inch, Secretary knew based upon several earlier instances of unconstitutional conduct via grievances and complaints where they intentionally, maliciously, and sadistically used excessive force on several other inmates that were materially similar to Schrock, Norris, Jordan, Perkins, Frame, Oakes, Moss, Asbell, Rozier, Manners, Boatwright, Clemmons, Childs, Dice, Hughes, Lister, Brazwell, Anderson, Cowart, Hooper, Petersen, Moss, Lusk, Veazey, Slatter, Medlock and Grant's violation of Plaintiff's clearly established Eighth Amendment rights to be free from excessive force, cruel and unusual punishment that additional training and supervision was warranted to avoid Excessive Use of Force recurring in the future.

131 58. Despite complaints from inmate Jaman Hampton, Gary Bruggeman, Camino Woods, Brian Smith, family members and grievances to his office from several other inmates, Mark S. Inch made a deliberate, intentional choice to forgo providing any additional training and supervision to Schrock, Norris, Jordan, Perkins, Frame, Oakes, Moss, Asbell, Rozier, Manners, Boatwright, Clemmons, Childs, Dice, Hughes, Lister, Brazwell, Anderson, Cowart, Hooper, Petersen, Moss, Lusk, Veazey, Slatter, Medlock and Grant

132 59. Plaintiff sustained severe, excruciating chronic pain, permanent physical injury and disfigurement to her body and rectum, loss of the capacity for the enjoyment of life and inconvenience because of Inch's failure to train and supervise defendant's.

## COUNT XVI SUPERVISORY LIABILITY
### (Schrock, Norris, Oakes, Moss, Caile, Clemmons, Childs, Turner, Tucker, Morgan, Dice, Hughes and Carr)

133 60. Defendant's Schrock and Norris who supervised their subordinates Perkins and Frame on June 21, 2019, are liable within their supervisory capacity for violating Plaintiff's Eight Amendment right to be free from excessive force.

134 61. Defendant's Oakes and Moss who supervised their subordinate Perkins on August 16, 2019, are liable within their supervisory capacity for violating Plaintiff's Eight Amendment right to be free from excessive force.

135 62. Defendant Cale who supervised her subordinate Frame on August 16, 2019, is liable within their supervisory capacity for violating Plaintiff's Eight Amendment right to be free from excessive force.

136 63. Defendant's Clemmons, Childs, Oakes, and Moss who supervised their subordinates Rozier, Asbell, Perkins, Boatwright, Manners, and Frame on August 16, 2019, are liable within their supervisory capacity for violating Plaintiff's Eight Amendment right to be free from excessive force.

137 64. Defendant's Dice and Patrick Hughes who supervised their subordinates Cowart, Lister, Bruzwell, Anderson, Petersen, and Hooper on august 16, 2019 are liable within their supervisory capacity for violating Plaintiff's Eight Amendment right to be free from excessive force.

138 65. Defendant's Turner, Dice, Patrick-Hughes, and Grant who supervised their subordinates Veazey, Lusk, Slatler and Medlock on August 16, 2019 are liable within their supervisory capacity for violating Plaintiff's Eight Amendment right to be free from excessive force.

139 66. Tucker, Carr, and Morgan who supervised their subordinate Mackall on August 22, 2019, are liable within their supervisory capacity for violating Plaintiff's Eight Amendment right to be free from excessive force.

140 67. Perkins, Frame, Rozier, Asbell, Boatwright, Manners, Cowart, Lister, Brazwell, Anderson, Patersen, Hooper, Veazey, Lusk, Slatler, Medlock, and Mackall all violated Plaintiff's clearly established Eight Amendment right to be free from excessive force.

141 68. At the time Plaintiff's clearly established Eight Amendment right to be free from excessive force was violated Defendant's Schrock, Norris, Oakes, Moss, Caile, Clemmons, Childs, Oakes, Moss, Dice, Patrick-Hughes, Turner, Tucker, and Carr personally participated in the violation of Plaintiff's clearly established Eight Amendment right to be free from excessive force.

142 69. Defendant's Schrock, Norris, Oakes, Moss, Caile, Clemmons, Childs, Oakes, Moss, Dice, Patrick-Hughes, Turner, Tucker, and Carr directed their subordinates to take the action(s)

7(0)0

70. resulting in the violation of Plaintiff's clearly established Eighth Amendment rights, knew that their subordinates would take action(s) resulting in violation of Plaintiff's clearly established Eighth Amendment right to be free from excessive force and failed to stop them from doing so.

## COUNT XVII DELIBERATE INDIFFERENCE
### (North, Lehman and Melvin)

71. Defendant's North, Lehman, and Melvin in their individual capacities while acting under color of law violated Plaintiff's clearly established Eighth Amendment rights to be free from cruel and unusual punishment and were deliberately indifferent to her serious medical needs when they failed and refused to treat the injuries that she sustained in the August 16, 2019, incidents.

72. Plaintiff had a serious medical need for her should which was broken and in a homemade sling, her broken ribs, and injury, rectal bleeding, as well as chemical burns to her face and tearing of her rectum from being digitally penetrated when she was assaulted.

73. Defendant's North, Lehman, and Melvin not only refused to document or treat her injuries sustained in the August 16, 2019, incident(s), but they showed her sick call request forms to Officers, then forced her to rewrite them and omit any and all injuries related to the August 16, 2019, incidents, as well as assertions that they were the result of staff assault or abuse.

74. North, Lehman, and Melvin failed to report Plaintiff's assertions of staff abuse, they acknowledged the fact that she was in fact injured by officers, her shoulder was broken, in a homemade sling, and one, if not several, of her ribs were broken, but they failed taking any corrective action by reporting the abuse, resulting injuries, documentary and creating them.

75. North, Lehman, and Melvin neither filed an incident report nor informed the administration about Plaintiff's assertions that she informed them of.

76. Lehman, North, and Melvin stated that they were not going to do all the paperwork required for an inmate alleging staff abuse, lose their jobs, or make enemies with the officers for her.

77. Lehman, North, and Melvin refused documenting and treating her injuries, stating that she deserved an "ass whooping." Lehman, North, and Melvin gave her creams they

78. knew were ineffective and would burn her face.  They told Plaintiff they hoped the creams burned her face off.

79. Plaintiff sustained permanent injury to her skin, disfigurement, ongoing severe, excruciating chronic pain and suffering, permanent discoloration to her face, aggravation of an existing condition, loss of capacity for the enjoyment of life and inconvenience.

80. Lehman, North, and Melvin acted with deliberate indifference to Plaintiff's serious medical needs by refusing to document or treat Plaintiff's injuries, disregarding the risk of serious harm.

Count XVII Deliberate Indifference

Schroch, Norris, Jordan, Perkins, Frame, Oates, Moss, Asbell, Rozier, Manners, Boatwright, Clemmons, Childs, Dice, Hughes, Lister, Brazwell, Anderson, Hooper, Petersen, Morgan, Marchall, Turner, Lush, Veaney, Slater, Medloch, Grant, Tucker and Carr

152. Defendants, Schroch, Norris, Jordan, Perkins, Frame, Oates, Moss, Asbell, Rozier, Manners, Boatwright, Clemmons, Childs, Dice, Hughes, Lister, Brazwell, Anderson, Hooper, Petersen, Morgan, Marchall, Turner, Lush, Veaney, Slater, Medloch, Grant, Tucker and Carr in their individual Capacities while acting under color of law violated plaintiff's clearly established Eighth amendment right to be free from cruel and unusual punishment and were deliberately indifferent to her serious medical needs.

153. On June 21, 2019, Schroch, Norris, Jordan, Perkins and Frame refused to get Plaintiff medical attention for her broken ankle, the need for medical attention was obvious due to the loud popping noise it made when Schroch slammed her to the ground coupled with her inability to walk and edema around her ankle.

154. On August 16, 2019, Frame, Oates, Moss, Perkins, Asbell, Rozier, Boatwright, Manners, Clemmons and Childs refused to get Plaintiff medical attention for her broken nose and shoulder, the need for medical attention was obvious due to her nose constantly bleeding, swelling and the disfigured appearance of it, as well as, her difficulty breathing and her shoulder hanging limp.

155. On August 16, 2019, Dice, Hughes, Lister, Brazwell, Anderson, Hooper, Petersen, and Moss refused to get plaintiff medical attention for her broken arms, ribs, shoulder and split lip, the need for medical attention was obvious based upon her arm and shoulder hanging limp, her crying out in pain everytime she moved and her lip hanging inside, out bleeding profusely. Plaintiff was also bleeding from her rectum which they ignored, along with the blood leaking through her uniform.

7(R)

166. On August 16, 2019, Dixe, Hughes, Turner, Lush, Veazey, Medlock, Slatter and Grant refused to get her medical attention after spraying her with chemical agents. Her need for medical attention was obvious based upon them spraying her with chemical agents for which she needed decontamination.

167. On August 22, 2019 Morgan, Marshall, Tucker and Carr also refused to get her medical attention after she'd been sprayed with chemical agents, her need for medical attention was obvious based upon them spraying her with chemical agents for which she needed decontamination.

168. Plaintiff begged and pleaded for medical attention, which she was denied and threatened with further bodily harm. Plaintiff was forced to make a homemade sling using a sheet for her arm and shoulder. Her lip healed with a permanent scar and her ribs healed without any medical attention and chronic pain.

169. Defendant's acted with deliberate indifference to these serious medical needs by refusing to get plaintiff medical attention to prevent her from having her injuries documented and/or treated.

168. Plaintiff sustained permanent injury, disfigurement, daily continuing, ongoing severe chronic pain in her arm and shoulder which affects her daily life activities, constant chronic nose pain and difficulty breathing, as well as, ongoing daily rectal bleeding and chronic pain in her rectum, mental anguish, loss of capacity for the enjoyment of life and inconvenience.

**VI. Relief Requested**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment:

161.) Granting punitive damages in the amount of $75,000 against each defendant joint and severally;

162.) Granting nominal damages in the amount of $1,000 against each defendant;

163) Granting compensatory damages in the amount of $50,000 against defendants joint and severally;

164) Granting damages in the amount of $15,000 on her state law battery claims against defendants joint and severally; and,

165) A jury trial on all issues triable by a jury, recovery costs associated with this suit and any additional relief this Court deems just, proper and equitable.

Stacy A. Scott #X59632
Tomoka Correctional Institution
3950 Tiger Bay Road
Daytona Beach, Florida 32124

**ATTENTION:** *The Prison Litigation Reform Act ("PLRA") does not permit awards for punitive or compensatory damages "for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act . . . ." 42 U.S.C. § 1997e(e).*

## VII.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

The PLRA requires that prisoners exhaust all available administrative remedies *(grievance procedures)* before bringing a case. 42 U.S.C. § 1997e(a). **ATTENTION:** *If you did not exhaust available remedies prior to filing this case, this case may be dismissed.*

## VIII. PRIOR LITIGATION

**ATTENTION:** *The "three strikes rule" of the PLRA bars a prisoner from bringing a case without full payment of the filing fee at the time of case initiation if the prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).*

A. To the best of your knowledge, have you had any case dismissed for a reason listed in § 1915(g) which counts as a "strike"?

√YES ☐NO

If you answered yes, identify the case number, date of dismissal and court:

1. Date: <u>October 25, 2017</u>  Case #: <u>1:17-cv-00174-MW-GRJ</u>

   Court: <u>United States District Court, Northern District, Gainesville Dvision</u>

2. Date: _____  Case #: _____

   Court: _____

3. Date: _____  Case #: _____

   Court: _____

   *(If necessary, list additional cases on an attached page)*

B. Have you filed other lawsuits in either *state or federal court* dealing with the same facts or issue involved in this case?

☐YES √NO

If you answered yes, identify the case number, parties, date filed, result *(if not still pending)*, name of judge, and court for each case *(if more than one)*:

1. Case #: _____  Parties: _____

Court: _____ Judge: _____

Date Filed: _____ Dismissal Date *(if not pending)*: _____

Reason: _____

2.  Case #: _____ Parties: _____

Court: _____ Judge: _____

Date Filed: _____ Dismissal Date *(if not pending)*: _____

Reason: _____

C.  Have you filed any other lawsuit in federal court either challenging your

conviction or otherwise relating to the conditions of your confinement?

√YES □ NO

If you answered yes, identify all lawsuits

1.  Case #: <u>6:19-cv-01753-PGB-GJK</u> Parties: <u>Scott v. White, et al.</u>

Court: <u>U.S District Court, Middle District of Florida</u> Judge: <u>Paul G. Byron</u>

Date Filed: <u>09/19/2019</u> Dismissal Date *(if not pending)*: <u>02/17/2021</u>

Reason: <u>Statute of Limitations</u>

2.  Case #: <u>1-18-cv-00010-GRJ</u> Parties: <u>Scott v. Perry, et al.</u>

Court: <u>U.S District Court, Northern District of Florida</u> Judge: <u>Gary J. Jones</u>

Date Filed: <u>01/10/2018</u> Dismissal Date *(if not pending)*: <u>03/05/2021</u>

Reason: <u>Settlement + Granting of Summary Judgment</u>

3.  Case #: <u>6:13-cv-1718-GRS-DAB</u> Parties: <u>Scott v. Ashton, et al.,</u>

Court: <u>U.S District Court, Middle District of Florida</u> Judge: <u>Unknown</u>

Date Filed: <u>Unknown</u> Dismissal Date *(if not pending)*: <u>01/07/2014</u>

Reason: <u>Failure To Prosecute</u>

4. Case #: _____ Parties: _____

   Court: _____ Judge: _____

   Date Filed: _____ Dismissal Date *(if not pending)*: _____

   Reason: _____

5. Case #: _____ Parties: _____

   Court: _____ Judge: _____

   Date Filed: _____ Dismissal Date *(if not pending)*: _____

   Reason: _____

6. Case #: _____ Parties: _____

   Court: _____ Judge: _____

   Date Filed: _____ Dismissal Date *(if not pending)*: _____

   Reason: _____

*(Attach additional pages as necessary to list all cases. **Failure to disclose all prior cases may result in the dismissal of this case.**)*

## IX. CERTIFICATION

I declare under penalty of perjury that the foregoing (including all continuation pages) is true and correct. Additionally, as required by Federal

Rule of Civil Procedure 11, I certify that to the best of my knowledge, information, and belief, this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to timely notify the Clerk's Office if there is any change to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date: 4/14/21    Plaintiff's Signature: _____

Printed Name of Plaintiff: STACY ANTONIO SCOTT JR.

Correctional Institution: TOMOKA CORRECTIONAL INSTITUTION

Address: 3950 TIGER BAY ROAD

           DAYTONA BEACH, FLORIDA 32124

**I certify and declare, under penalty of perjury, that this complaint was**

**(*check one*) √ delivered to prison officials for mailing or □ deposited in**

**the prison's mail system for mailing on the** _14th_ **day of** April, **2021.**

Signature of Incarcerated Plaintiff:

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was furnished

via U.S. Mail to: <u>Lindsey Miller-Hailey</u>, <u>Assistant Attorney General</u>, <u>PL-01 The</u>

<u>Capitol, Tallahassee, Florida 32399</u> on this _14th_ day of April, 2021.

Stacy A. Scott #X59632
Tomoka Correctional Institution
3950 Tiger Bay Road
Daytona Beach, Florida 32124