UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

STACY ANTONIO SCOTT, JR.,

Plaintiff,

v. Case No. 3:20cv5968-MCR-HTC

LEAH JAMES FRAME, et al.,

Defendants.
_____________________________/

REPORT AND RECOMMENDATION

Plaintiff, Stacy Antonio Scott,[1] proceeding *pro se* and *in forma pauperis*, filed an amended complaint under 42 U.S.C. § 1983, ECF Doc. 40, bringing eighteen (18) counts against thirty-eight (38) defendants, alleging excessive force, failure to intervene, state law battery, retaliation, failure to train and supervise, and deliberate medical indifference. This matter is now before the Court on Defendants' amended motion to dismiss for failure to exhaust administrative remedies. ECF Docs. 56, 62 and 77.[2] After reviewing Defendants' motions, Plaintiff's response (ECF Doc. 78),

[1] In the Amended Complaint, Plaintiff identifies as "a transgender inmate" and uses exclusively feminine pronouns to refer to herself, ECF Doc. 40. Thus, the undersigned will do the same.

[2] The motion at ECF Doc. 56 was filed by Florida Department of Correction ("FDOC") Defendants S. Anderson, Ashley Asbell, J. Baxley, Vickie Caile, Larry Childs, Walker Clemmons, Cowart, D. Dice, Leah James Frame, K. Grant, Gualarson-Devine, Christopher Patrick Hughes, Johnson,

and the relevant law, the undersigned respectfully recommends Defendants' motions be GRANTED.

As discussed below, Plaintiff does not dispute she did not file a single grievance on *any* of the numerous incidents of misconduct made the subject of this suit or against *any* of the over thirty (30) Defendants she seeks to sue. Instead, Plaintiff alleges various officers, including Defendants, at three (3) separate institutions, prevented or deterred her from filing a grievance through physical abuse and retaliation. The undersigned finds, however, that those allegations are simply not credible. Notably, Plaintiff filed over fifty (50) other grievances, the instant complaint, and even obtained declarations from inmates at the very institution where Defendants work or worked. As the Eleventh Circuit has clearly held, it is the district court's job to resolve questions of fact on issues relating to exhaustion rather than leave those questions for the jury. Resolving those facts here, the undersigned finds the grievance and appeal procedures were available to Plaintiff – she simply did not utilize them for the claims raised here.

---

Linda Jordan, J. Lusk, Todd Mackall, D. Medlock, Isaac Alexander Montiel, Nathaniel Morgan, B. Moss, Sean Norris, B. Oakes, Krystal Perkins, K. Petersen, Keary Rosier, Joseph Schrock, P. Tucker, W. Turner. That motion was joined in by the remaining FDOC Defendants (other than Defendant Veazey who had not yet been served). ECF Doc. 77. The amended motion at ECF Doc. 62 was filed by the Centurion Defendants, C. Lehman, S. Melvin and D. North. It amended the Centurion Defendants' original motion at ECF Doc. 61 to add the certification required in Local Rule 7.1(F).

## I. BACKGROUND

Plaintiff, an inmate of the FDOC, currently incarcerated at Dade Correctional Institution, files this suit against numerous officers for violations of the Eighth Amendment. Plaintiff alleges she was subjected to anti-transgender harassment, beatings, and sexual assaults at the hands of the Defendants and complains about various incidents occurring in 2019 while Plaintiff was at Santa Rosa Correctional Institution ("Santa Rosa CI"). Plaintiff also claims the Centurion Defendants were deliberately indifferent to her serious medical needs by failing to treat her for injuries she received from Defendants' assaults.

Although Plaintiff does not have to allege or address exhaustion in her complaint, Plaintiff admits she did not file grievances or appeals related to the incidents subject to the instant suit and explains she did not do so because the administrative remedies were not available to her. Namely, Plaintiff alleges one or more of the Defendants, as well as officers at other institutions, intercepted her grievances, threatened her not to file grievances, and retaliated against her through the use of force.

The Defendants have moved to dismiss Plaintiff's amended complaint for failure to exhaust. The FDOC Defendants argue Plaintiff failed to file any grievances, "between the date of July 17, 2019, and the date of filing the initial complaint on November 30, 2020, …. related to the Defendants' alleged actions or

inactions while Plaintiff was housed at Santa Rosa Correctional Institution." ECF Doc. 56 at 10; ECF Doc. 56-1 (Bureau of Inmate Grievance Appeals Summary); Ex. ECF Doc. 56-2 (FDOC Inmate Grievance Appeals Records Search). Defendants contest Plaintiff's allegations that the grievance procedures were unavailable to her. Specifically, Defendants argue Plaintiff had the opportunity to, and did, file grievances while she was at Santa Rosa CI and Blackwater River Correctional Facility ("Blackwater").

Although the Centurion Defendants filed a separate motion to dismiss, they essentially make the same arguments and rely on the same evidence. First, the medical defendants point out that the log of Plaintiff's formal grievances filed during the relevant time shows three (3) grievances coded as relating to medical issues: the first received on September 6, 2019; the second on September 26, 2019; and the third on January 24, 2020. Second, they argue the formal grievances were denied and a search of Plaintiff's FDOC appeals for the relevant time period show no medical-related appeals. ECF Doc. 62 at 4 (citing ECF Docs. 56-1 at 2 and 56-2 at 1-2).

Also, the Centurion Defendants note that Plaintiff continued to use the grievance procedure after being transferred to Blackwater and that, between the time of her transfer and the filing of this lawsuit, she filed twenty (20) informal grievances, six (6) formal grievances, and three (3) appeals. ECF Doc. 62 at 9-10 (citing ECF Docs. 56-1 and 56-2).

## II. LEGAL STANDARDS

Under 28 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA")[3], "[n]o action shall be brought with respect to prison conditions under ... [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *See Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2004); *see also Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006) (noting that a prisoner must exhaust administrative remedies before challenging the conditions of confinement and concluding that the PLRA demands "proper exhaustion").

"[F]ailure to exhaust is an affirmative defense under the PLRA[.]" Nevertheless, prisoners are not required to "specifically plead or demonstrate exhaustion in their complaints." *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Abram v. Leu*, 759 F. App'x 856, 860 (11th Cir. 2019) (PLRA exhaustion is an affirmative defense) (per curiam) (*citing Jones*, 549 U.S. at 216). Because it is an affirmative defense, Defendants bear the burden of proving Plaintiff has failed to exhaust her available administrative remedies. *See Jones,* 549 U.S. at 216.

While not jurisdictional, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits." *Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir. 2008); *see also Jones*, 549 U.S. at 211; *Woodford*, 548 U.S. at 101. Thus,

---

[3] Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321 (1996).

"exhaustion is mandatory ... and unexhausted claims cannot be brought." *Pavao v. Sims*, 679 F. App'x 819, 823 (11th Cir. 2017) (per curiam) (*citing Jones*, 549 at 211). Not only is there a recognized exhaustion requirement, "the PLRA ... requires proper exhaustion" as set forth in the applicable administrative rules and procedures of the institution. *Woodford*, 548 U.S. at 93-94.

The applicable administrative rules here are those promulgated by the FDOC. The FDOC provides a grievance procedure and set of requirements for its inmates, which is codified in the Florida Administrative Code 33-103 through 33-103.018. The grievance procedures generally require an inmate to: (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance with the warden's office, and then (3) submit an appeal to the Office of the Secretary. *See* Fla. Admin. Code r. 33-103.005 to 33-103.007; *see also Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218 (11th Cir. 2010); *Dimanche v. Brown*, 783 F.3d 1204, 1211 (11th Cir. 2015).[4]

In the Eleventh Circuit, the defense of failure to exhaust under the PLRA is considered a matter of abatement under Fed. R. Civ. P. 12, and, thus, is treated like a defense of lack of jurisdiction. *Bryant*, 530 F.3d at 1374, 1376. Accordingly, a district court may properly "consider facts outside of the pleadings to resolve a

[4] For complaints regarding medical treatment, an inmate may bypass the informal grievance step. *See* Fla. Admin. Code r. 33-103.005(1).

factual dispute regarding exhaustion so long as the factual disputes do not decide the merits and the parties have a sufficient opportunity to develop a record." *Id.*; *Singleton v. Dep't of Corr.*, 323 F. App'x 783, 785 (11th Cir. 2009) (per curiam) (quoting *Bryant*, 530 F.3d at 1376).

Deciding a motion to dismiss for failure to exhaust administrative remedies as required by the PLRA involves a two-step analysis as established in *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). The court first "looks to the factual allegations in the defendant's motion to dismiss and those in plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.* at 1082 (citation omitted).

"If the complaint is not subject to dismissal through the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082; *Whatley v. Warden, Ware State Prison* ("*Whatley I*"), 802 F.3d 1205, 1213 (11th Cir. 2015) (defendants' contention that plaintiff's exhibits were fabricated created a factual dispute that required explicit findings under the second *Turner* step; such findings are subject to review on appeal for clear error) (citation omitted).

Because exhaustion is a preliminary issue, the district court must "make[s] *specific findings* to resolve the disputed factual issues related to exhaustion," rather

than leave it as a matter for the jury. *Whatley I*, 802 F.3d at 1211-12 (emphasis in original). Thus, at the second step, the court acts as a factfinder and may make credibility determinations. *Bryant*, 530 F.3d at 1377; *Priester v. Rich*, 457 F. Supp. 2d 1369, 1377 (S.D. Ga. 2006), *aff'd sub nom. Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008) ("Not resolving the preliminary, administrative exhaustion issue, but instead adding it to a jury's burden, obviously confounds § 1997e(a)'s purpose."). Also, while the court may conduct an evidentiary hearing, one is not necessary "in the absence of a timely request … and where the resulting order is to be a dismissal without prejudice."[5] *Bryant*, 530 F.3d at 1377, n. 16.

## III. PLAINTIFF'S ALLEGATIONS

As stated above, Plaintiff alleges in the amended complaint that administrative procedures were not available to her. In her amended complaint, Plaintiff describes specific instances of alleged threats, abuse, and interference, which Plaintiff argues prevented her from filing grievances. Plaintiff includes the same instances, as well as others, in her response to the Defendants' motions. These allegations paint a tale of repeated torture at the hands of over three (3) dozen officers, which, if credible, support a determination that grievance and appeal procedures were not available to

---

[5] A judge's credibility choices based on paper records are accorded the same deferential standard of review as his credibility choices based on his evaluation of live testimony. *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 574 (1985) (absent clear error, a district court's fact findings cannot be overturned even if they "do not rest on credibility determinations but are based instead on physical or documentary evidence or inferences from other facts").

Plaintiff. However, a careful review of the evidence presented by the Defendants, which is unrefuted by Plaintiff, and of Plaintiff's allegations, reveals numerous inconsistencies that undermine the believability of Plaintiff's allegations. The following is a summary of Plaintiff's allegations as contained in the amended complaint; response and attached Declarations,[6] all of which occurred at Santa Rosa CI, unless otherwise indicated.

On June 17, 2019, Plaintiff "submitted a grievance" against defendant Linda Jordan, for utilizing vulgar language towards her. ECF Doc. 40 at 10. (Plaintiff did not specify how she "submitted" that grievance.). Defendant Captain Schrock intercepted the grievance and told her, on June 21, 2019, "it had not been logged" and "ripped it up." *Id.* Defendants Captain Schrock, Lieutenant Norris, Sergeant Jordan, Office Frame and Officer Perkins then beat Plaintiff and threatened "to beat her again and kill her if she wrote another grievance against them" or "if her mother called Schrock or Norris again." *Id.* "Out of fear for her life, safety and well-being, coupled with Schrock's threat of further bodily harm, Plaintiff did not grieve the beating" or mention it when she had medical call out in June of 2019. *Id.*

[6] Plaintiff relies on her own declaration as well as those of four (4) inmates. Although Plaintiff states in her declaration that the statements are contained therein are made "under penalties of perjury", *see id.* at 2 and 9, Plaintiff neither signed nor dated the declaration. *Id.* at 9. Nevertheless, for purposes of the motion to dismiss, and giving Plaintiff the benefit of the doubt, the Court will treat the declaration as if it were properly sworn.

On August 16, 2019, Defendant Frame confronted Plaintiff claiming Plaintiff "had snitched Frame out." *Id.* Plaintiff does not allege whether the supposed "snitching" was related to the filing of a grievance. *Id.* Plaintiff was beaten, threatened, and called vulgar homophobic and transphobic names by several Defendants immediately thereafter, and Defendant Major Oakes threatened "to beat her into a coma" if she reported or attempted to report the beating. *Id.* at 11. Major Oakes told her that "if she attempted reporting the beating to any staff member that he would know, the staff member she attempts reporting it to would beat her or have her beat" and that "if she attempted writing a grievance it would never make it anywhere, never be logged, the grievance would be brought to him and she would be beat again." *Id.*

Nevertheless, Plaintiff attempted to report the incident to Defendants Baxley and Gustafson-Devine, Senior Inspectors General. *Id.* The two responded with homophobic and transphobic comments, stated they had "no sympathy" for Plaintiff, and that, even if officers killed Plaintiff, they would cover for the officers because they did so "all the time" and they were "one big family with the officers", "held grudges" and "stuck together." *Id.* Defendants Baxley and Gustafson-Devine then threatened to keep Plaintiff in confinement for six (6) months and have Major Oakes and the "boys on his 'Hit Crew'" beat Plaintiff.

The two Senior Inspectors General also reported to Defendants Oakes, Moss, Perkins, and Frame that Plaintiff had attempted to report the beatings. *Id.* at 11. Major Oakes immediately confronted Plaintiff and punched her in the face. *Id.* at 12. Later, after the noon meal that same day, eleven (11) of the Defendants took Plaintiff to the law library, beat her unnecessarily, and threatened that "she would be beat into a coma if she opened her mouth about the beating." *Id.*

After the 3:00 p.m. prisoner count, several officers brought her to "the Captain's Office" where Defendants Dice and Patrick-Hughes informed Plaintiff she was going to confinement per the orders of several of the other Defendants. *Id.* at 12. On the way, several Defendants beat her and burned her with a cigarette, breaking her arm and ribs, splitting her lip, hurting her shoulder, and causing her to vomit blood and fluids. *Id.* at 13. After that, ignoring her pleas for medical attention, they dragged her toward the center gate. Eventually, they pinned her to the ground and told her "they'd give her their own medical attention." *Id.* Defendants Dice and Hughes pulled her pants and underwear down, repeatedly grabbed and jerked her penis and testicles and Dice inserted his fingers painfully in Plaintiff's rectum. *Id.*

Eventually, Plaintiff was led to the laundry room at K-Dorm, where she was sprayed with chemical agents and several Defendants took turns beating her until she defecated on herself. They also "burned her fingertips with a lighter and

threatened to do it again if she wrote or attempted any grievances concerning the abuse that she endured that day." *Id.* at 14.

After being put in a cell, Plaintiff was denied several meals and a shower and also had everything taken from her cell, including the mattress and bedding, and her water and heat were cut off. Pl. Decl., ECF Doc. 78-1 at 4. She was also denied grievance forms and a pen by several Defendants, who told her, "Do you think it's a game?", "You were warned", "that's why you have nothing now"…. "The longer you try grieving the longer you'll stay that way", and "drop it or else." *Id.*

Despite those threats, Plaintiff borrowed a pen and grievance forms from another inmate and attempted to submit grievances "to the institution, Secretary of FDC Mark S. Inch and Inspector General Lester Fernandez." *Id.* However, Defendant Dix refused to collect the grievances and walked past the cell, stating, "you were warned", "now you're going to starve faggot", "you know I used to be a sergeant right[?]", and "I have friends in security". *Id.* Plaintiff and her roommate were given empty trays at meal feeding time.

Another inmate volunteered to submit Plaintiff's grievances for her. Defendant Dix collected the grievances from the other inmate, opened them up and began reading them in front of the entire wing. He accused Plaintiff and the other inmate of attempting to pull a "fast one" and placed the grievances in his pocket. He walked away "stating he has something for them both." *Id.* Plaintiff, her roommate,

and the other inmate were starved several meals for attempting to file the grievances. *Id.*

Three (3) days later, on August 22, 2019, Captain J. Carr and an unknown officer escorted Plaintiff to the center gate at Santa Rosa Main Unit. Defendants Tucker, Morgan, and Mackall were waiting for her arrival. Morgan approached her stating "we need to talk about these", waving the grievances that Dix had placed in his pocket. When Plaintiff remained silent, Morgan stated, "'Now you don't want to talk sissy?" and "Do you think we're soft, bitch?" Morgan directed Mackall to spray Plaintiff with chemical agents stating, "Spray this faggot ass bitch." *Id.* at 15.

Plaintiff was also again beaten and digitally penetrated in her rectum and threated "with receiving the same type of treatment again anytime she attempted grieving an Officer or Staff Member beating or abusing her." *Id*. Later, as Plaintiff was returning to "MTC building", Defendant Gustafson asked Morgan in front of Plaintiff, "Did [they] handle [them] grievances?", and Morgan advised her that they did and stated that Plaintiff would not be submitting any other grievances related to staff assault or abuse unless she "wanted to die." *Id.*

Despite those threats, Plaintiff attempted to report the abuse to Senior Inspector Walker but was told by Walker to "leave it alone" because it was Plaintiff against them, and no one would believe Plaintiff. *Id.* at 15. Also, Defendant Moss "threatened Plaintiff with death and stated that they will stop starving and beating

her when she stopped attempting to submit grievances and having her mother call the institution or they'd just beat her to death, cover it up and lie stating that she attempted attacking one of them with a weapon when they became tired of intercepting, ripping up and burning her grievances." *Id.*

On September 4, 2019, Defendants Turner and Grant approached Plaintiff's cell stating they would "fall back" and "let [Plaintiff] live" if she stopped submitting grievances regarding anything relating to the August 16, 2019 incidents. Pl. Decl., ECF Doc. 78-1 at 7. Otherwise, they would "turn the heat up" by placing her in close management, pressing outside charges and getting her additional jail time. *Id.*

On September 3 and 9, 2019, Plaintiff was seen by Defendant Nurses Lehman and North for her injuries. Lehman and North showed the Defendant officers Plaintiff's sick call requests, then "forced her to rewrite them omitting any and all allegations and statements that her injuries were the result of staff abuse" because "they were not going to do all the paperwork that was required when an inmate alleged they were injured from staff assault or abuse." *Id.* at 17. They also stated that "they were not about to lose their jobs or make enemies with the officers over an inmate being beat by officers." *Id.* They forced Plaintiff "to remove her complaints of shoulder injury and pain, ignored her homemade sling, excessive bleeding from her rectum and splitting of her rectum due to staff assault, as well as her broken ribs." *Id.* Defendants Lehman, North and Melvin refused to document

or treat Plaintiff for her injuries, stating that they were not going to lose their jobs or make enemies for an inmate who deserved an "ass whooping". *Id.*

On September 29, 2019, Plaintiff mailed a letter to Inch and Fernandez via legal mail regarding the assaults, interception of her grievances and starvation. Plaintiff's mother, sister and other family members also contacted Inch, Fernandez, Clemmons, Childs, Smith, and Santiago as to these matters. The family members were told that officials would look into the matters when they got to it, but never did. Instead, the abuse and starvation worsened as a result of the letters, calls and emails from Plaintiff and her family. *Id.* at 16.

Plaintiff also attached to her response sworn declarations signed by four inmates in confinement with her in Santa Rosa CI who confirmed (1) Plaintiff had attempted to file grievances; (2) officers in charge of collecting the grievances would open them and refuse to forward them or would just ignore grievances placed for collection by Plaintiff; (3) officers searched Plaintiff and her roommate's cell several times in one day, and they had their cell possessions removed, including clothing and bedding, (4) causing them to "freeze"; (5) officers assaulted and "slapped [Plaintiff] around"; (6) officers took away her homemade sling; and (7) Plaintiff and her roommate were given "air trays" during meals to starve them for attempting to submit grievances." ECF Doc. 78-1.

The inmates each declared that they attempted to submit grievances on Plaintiff's behalf, but Defendant Dix still opened the grievances and read them, causing all four to have all clothing and bedding removed, showers and toilet paper denied, and water turned off in their cells (which caused their feces and urine to collect and them to be unable to wash their hands or wipe themselves). Each inmate declared that Captain Turner and Sergeant Grant told them that if Plaintiff stopped attempting to grieve then they would "stop assaulting us, give us our clothing back and allow us to eat"; otherwise, the inmates would "continue starving, freezing, smelling 'shit' and 'piss' in addition to wearing 'ass whoopings.'" *See, e.g.*, Decl. of Maurice Green, ECF Doc. 78-1 at 16. Each reported that "[a]n attempt was made to report the abuse and retaliation to the warden, both assistant wardens, the colonel and major, which made things worse as they threatened to have us beat and ordered Turner and Grant to punish us." *Id.*

Inmate Germaine Howard also declared that when the officers made grievance rounds, "the grievance box was always opened when it was supposed to be closed. If it was ever secured, which was rare, they wore the key around their wrist. They used the key to open the box, read our grievances and either throw them away or place them in their pockets." *Id.* at 19.

Plaintiff was transferred to Northwest Florida Reception Center ("NWFRC") on January 15, 2020, where she stayed only six (6) days. Yet, even during that brief

period of time, Plaintiff claims she was denied the ability to file any grievances. Specifically, Plaintiff alleges that after she arrived at NWFRC, she placed an inmate request to the grievance coordinator into the locked grievance box to request an extension of time and authorization to file grievances about what had happened at Santa Rosa CI. Plaintiff claims she was taken to the major's office on January 20, 2020, was “confronted, threatened”, and "[Assistant Warden] Brown shredded plaintiff's request and attached proposed grievances.” *Id.* at 6 (citing her declaration at ECF Doc. 78-1 at 2-9). Brown stated, “the people [Plaintiff] wanted to grieve were their family and had already called about [Plaintiff], giving them a heads up.” ECF Doc. 78-1 at 7. Brown continued that Plaintiff should “[l]eave it alone and wear it” or he would have another officer fabricate a false disciplinary report to have Plaintiff sent back to close management at Santa Rosa. *Id.*

On January 22, 2020, Plaintiff was transferred to Blackwater and, the next day, submitted an inmate request form in the locked grievance box to grievance coordinator Bethea. *Id.* at 8. Attached to the inmate request for authorization to file an out-of-time grievance were the proposed grievances Plaintiff sought to file. *Id.* Rather than consider the request, however, Bethea, Acting Chief of Security S. Davis, and Assistant Warden Micah Neal confronted Plaintiff. Neal told Plaintiff she was “her worst fucking nightmare and the bitch who could make [Plaintiff’s] life flip upside down.” *Id.* at 8. Neal advised she had recently been the classification

supervisor at Santa Rosa and "everyone was family to her." *Id.* Neal told Plaintiff she was not getting any leave to file grievances out of time and that grievances about Santa Rosa would not go anywhere anyway because "that's how they get down over there." *Id.* Neal then directed Bethea to destroy the request and grievances and threatened that she better not hear anything else about it because "if I pursued it, she'd lie and say I grabbed her ass, have me beat to a pulp, sent back to Santa Rosa on close management and press outside charges." *Id.*

## IV. ANALYSIS

As detailed above, Plaintiff alleges the grievance procedures were unavailable to her at Santa Rosa CI, Blackwater, and NWFRC because officers at each of those institutions intercepted her grievances, threatened her to deter her from filing grievances, or retaliated against her for trying to file grievances.

It is axiomatic that a prisoner cannot be expected to exhaust remedies that are not available. *Turner*, 541 F.3d at 1084 ("Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available."). A remedy is unavailable if: (1) the administrative remedy is "a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use ... [and] no ordinary prisoner can discern or navigate it;" or (3) prison officials "thwart inmates from taking advantage of a

grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632 (2016).

A threat of harm may render a remedy unavailable if both of these conditions are met: (1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust. *Turner*, 541 F.3d at 1084.

Thus, under the first step of the *Turner* analysis, the complaint is not subject to dismissal because the allegations in Plaintiff's response, if accepted as true, negate a dismissal. Indeed, in *Turner,* the Eleventh Circuit found the Warden's alleged threat "to put [Turner's] ass in a van … and transfer [him] so far south that [he] would never be able to see [his] family again till [he] got out of the Georgia [p]rison [s]ystem," was sufficient to create a question of fact as to whether remedies were available, requiring the court to go further and make factual determinations. *Turner*, 541 F.3d at 1084. Thus, the Court must proceed to the second step. *See Id.* at 1086 ("Until the district court decides that and any other relevant factual issues, it would be premature to apply to this case the standard we announce today.").

Under the second step, the "the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have

shown a failure to exhaust." *Whatley I*, 802 F.3d at 1209 (citation omitted). Unlike in the summary judgment posture, a district court must weigh the evidence and make credibility determinations "to resolve disputes of fact" about whether "defendants have shown a failure to exhaust." *See id.*; *see also Whatley v. Smith* ("*Whatley II*"), 898 F.3d 1072, 1083 (11th Cir. July 30, 2018) ("The district court permissibly weighed the evidence and credited the defendants' affidavits over Mr. Whatley's exhibits.").

The Court has considered the Plaintiff's allegations and declarations and the materials supplied by Defendants and finds Plaintiff's allegations that officials at Blackwater and NWFRC intercepted and destroyed her grievances and threatened physical harm and false charges not credible. "While Plaintiff's contention that [her] grievances were 'throw[n] away' is logically consistent with Defendants' evidence showing Plaintiff submitted no grievances, the Court finds Plaintiff's self-serving, unsupported contention lacks credibility and should not be credited". *See Butler v. Lingold*, 2021 WL 808862, at *2 (M.D. Fla. Mar. 3, 2021). Therefore, for the reasons discussed below, the undersigned finds that administrative remedies were available to Plaintiff.

First, Plaintiff's specific allegations are contradicted by the evidence presented by Defendants. For example, Plaintiff alleges she was placed in confinement on August 16, 2019, and that Defendants refused to give her a pen or

grievance forms. In fact, she alleges the grievances process was unavailable to her "because Tuner, Grant, Lusk, Slatter, Veazey, and Medlock, denied her a pen, grievance forms and she could only be obtained from them because [s]he was being held in confinement during the period in which she was required to file the grievance at issue." ECF Doc. 78 at 7. Those allegations have several problems.

Under the grievance procedures, Plaintiff could have filed an out of time grievance and asked for it to be accepted for good cause. *Bryan*, 530 F.3d at 1379; Fla. Admin. Code r. 33.103.011(2) (allowing an extension of time or late submission of grievances). Also, Plaintiff filed two (2) grievances on August 20, 2019, one relating to her administrative confinement and the other relating to access to the law library, which was approved. ECF Doc. 56-1 at 1. The Court also notes that on July 31, 2019, *while in confinement*, Plaintiff filed a grievance complaining of her confinement status and stating that an inmate made false allegations against her because she is transgender. ECF Doc. 56-1 at 6. That grievance was processed by Defendant Childs, and was approved because Defendant was released from confinement on August 5. Thus, Plaintiff's allegations that these Defendants would not give her a pen or grievance form while in confinement are not credible.

Second, Plaintiff's allegations that she was prevented from filing grievances are also belied by the over fifty (50) grievances she filed while she was at Santa Rosa CI and Blackwater. While Plaintiff wants the Court to believe she was deterred and

prevented from filing grievances, a review of the grievance logs show that Plaintiff filed twenty (24) informal grievances and five (5) formal grievances while she was at Santa Rosa CI, including numerous grievances filed during the very period from June 2019 to September 2019 when Plaintiff claims she was being beaten and threatened by the Defendants. ECF Doc 56-1 at 1-4. Plaintiff also filed five (5) informal grievances and three (3) formal grievances while she was at Santa Rosa Annex, and Plaintiff filed twenty (20) informal grievances and six (6) formal grievances while she was at Blackwater. *Id.* The grievances ranged in complaint from medical issues, to security issues because of Plaintiff's transgender status, to lack of access to the law library or clerks, to facility conditions. *Id.* Nowhere in Plaintiff's response does Plaintiff address her ability to file these other grievances.

While none of the grievances related to the abuse complained of in the instant complaint, several grievances complained about mistreatment by officers because of Plaintiff's transgender status. ECF Doc. 56-1 at 1. For example, on September 25, 2019, Plaintiff aggrieved a toilet issue and complained that despite reporting it to officers and sergeants, no action was being taken because she is transgender. ECF Doc. 56-1 at 5. One month later, on October 25, 2019, Plaintiff aggrieved officers placing other inmates in the cell with her despite her transgender status and "disregarding the risks to [her] safety" and "laughing at [her]." ECF Doc. 56-1 at 7. On November 17, 2019, Plaintiff appealed the denial of that grievance to the

Warden. ECF Doc. 56-1 at 8. On November 20, 2019, Plaintiff appealed the same grievance to the Secretary. ECF Doc. 56-1 at 9.

Thus, it belies credibility to believe Plaintiff could file grievances complaining about officers at Santa Rosa CI for deliberate indifference to her transgender status but was unable to file grievances against Defendants for the conduct complained of here. *See Bryant*, 530 F.3d at 1377 (affirming district court's factual determination that plaintiff's alleged lack of access to grievance forms at GSP was not credible, especially given unrebutted evidence that [plaintiff] successfully filed a grievance at GSP, although it was one for property loss).

"[Plaintiff's] history of filing grievances [is] evidence that the defendants did not make administrative remedies unavailable to him ... or destroy [her] grievances." *See Whatley II*, 898 F.3d at 1083. Indeed, in addition to *Bryant,* numerous other courts in this circuit have found remedies were available despite a prisoner's allegations of threats or other interference where there was evidence the prisoner filed other grievances during the time period the prisoner alleged he was prevented from filing a grievance regarding the subject incident. *See e.g., Minnis v. Pittman*, 2018 WL 3974112, at *9 (M.D. Fla. Aug. 20, 2018) ("plaintiff's abundant grievance record reflects that the alleged threats of retaliation, if they even occurred, were not what prevented him from filing a grievance about Officer Fogle allegedly slamming the food flap on his hand"); *Schlicher v. Fla. Dep't of Corr.*, 399 F. App'x 538, 539

(11th Cir. 2010) (affirming magistrate judge's determination that remedies were available where record showed other grievances were filed); *Halpin v. David*, No. 4:06CV457-RH/WCS, 2009 WL 10697970, at *4 (N.D. Fla. July 9, 2009), *report and recommendation adopted*, No. 4:06CV457-RH/WCS, 2009 WL 2960936 (N.D. Fla. Sept. 10, 2009) ("While Plaintiffs have argued that inmate Halpin could not grieve these issues while at Wakulla Correctional Institution because of sabotage or threats of retaliation against him, the exhibits Plaintiffs submitted with the second amended complaint show that he did file other grievances while there."); *Schlicher v. Fla. Dep't of Corr.,* 399 F. App'x 538, 539 (11th Cir. 2010) (per curiam) (affirming dismissal for failure to exhaust administrative remedies where plaintiff argued prison officials prevented him from filing grievances through threats, but nonetheless filed several insufficient grievances); *Pace v. Lewis,* 2021 WL 3485653, at *10 (S.D. Fla. Apr. 29, 2021), *report and recommendation adopted sub nom. Pace v. Lawrence,* 2021 WL 3485651 (S.D. Fla. July 13, 2021) ("Plaintiff's pattern in 2017 of filing grievances demonstrates that Plaintiff was not actually prevented from following the MDCR administrative procedures in place at Metro-West and TGK.").

Similarly, it strains believability that Plaintiff was prevented from filing grievances at NWFRC and at Blackwater simply because those officers wanted to protect the Santa Rosa CI officers. The Blackwater officers were perfectly fine with allowing Plaintiff to file over twenty (20) grievances about their own failures or

misconduct. As the magistrate judge found in *Bryant*, "[Plaintiff]'s suggestion that prison officials at GSP denied him access to grievances for over two years to protect colleagues at Rogers is sorely lacking in credibility." *Id.* at n. 17.

Third, if the collusion among officers was as pervasive as Plaintiff suggests or the threats as effective in deterring Plaintiff from complaining about the Santa Rosa officers, Plaintiff would have been deterred from filing the instant complaint, which she did while she was at Blackwater. If Plaintiff was not deterred from filing a complaint against the Santa Rosa CI officers, alleging they "beat her to a pulp," it is hard to believe she was deterred from filing grievances covering the same issues. Likewise, it defies common sense to believe Defendants prevented Plaintiff from filing grievances but has allowed other inmates, still at Santa Rosa CI, to submit declarations to support Plaintiff's complaint. ECF Doc. 78-1 at 11-22. This is hard to believe considering that Plaintiff alleges that, when another inmate tried to help Plaintiff with filing a grievance, officers also retaliated against that inmate.

Fourth, Plaintiff does not allege anyone threatened her not to file grievances against the Centurion Defendants nor has she alleged any reason why officers at Blackwater or NWFRC would want to protect the Centurion Defendants. Plaintiff also fails to explain why she was able to file three (3) grievances related to her medical care, and yet unable to appeal any of the denied medical grievances.

Page 26 of 27

Thus, in resolving the factual disputes at step two of the *Turner* analysis, the undersigned finds that Plaintiff did not exhaust her administrative remedies, which remedies were available to her. *See Minnis*, 2018 WL at *9 ("Based on the totality of the record and the reasons stated above, the Court does not find Plaintiff's claim credible that Officer Fogle or others threatened him not to report the food flap incident. Even if officers did make such threats toward Plaintiff, those threats are not what actually caused him to fail to exhaust administrative remedies.").

## V. CONCLUSION

Accordingly, it is respectfully RECOMMENDED that

1. The motions to dismiss at ECF Doc. 56, 62, and as adopted by the Defendants in ECF Doc. 77, be GRANTED.

2. The case be DISMISSED WITHOUT PREJUDICE as to all Defendants and all claims, for Plaintiff's failure to exhaust administrative remedies.[7]

[7] Although the motions to dismiss were filed before Defendant Joshua Veazey was served, because the findings in this Report and Recommendation apply equally to the claims against him, a dismissal of the entire case is appropriate. *See Escobar v. Crosby*, 363 F. Supp. 2d 1361, 1366 (S.D. Fla. 2005) (holding dismissal of prisoner's claims against unserved defendants was appropriate based on both the prisoner's failure to effect timely service under Federal Rule of Civil Procedure 4(m) and his failure to exhaust administrative remedies); *Clark v. State of Ga. Pardons and Paroles Bd.*, 915 F.2d 636, 640-41 (11th Cir. 1990) ("If an identical claim had recently been litigated unsuccessfully by others, perhaps a section 1915(d) dismissal could be utilized" in favor of unserved Defendants).

3. The clerk be directed to close the file.

Done at Pensacola, Florida, this 9th day of December, 2021.

/s/ Hope Thai Cannon

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed **within fourteen (14) days** of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.